The Honorable James L. Robart

1
2
3
4
5
6
7
8
9 UNITED STATES DISTRICT COURT

10 WESTERN DISTRICT OF WASHINGTON

11 STANLEY ZHONG and NAN ZHONG,

   Plaintiffs,            Case No. 2:25-cv-00348-JLR
12
        v.                THE REGENTS OF THE UNIVERSITY
13                        OF WASHINGTON'S MOTION TO
   THE REGENTS OF THE UNIVERSITY    DISMISS
14 OF WASHINGTON,
                          Noted for August 13, 2025
       Defendant.
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT'S MOTION TO DISMISS
2:25-cv-00348-JLR

1

2

**TABLE OF CONTENTS**

3

4

I.    INTRODUCTION .......................................................................................... 1

II.   BACKGROUND ............................................................................................ 2

5

6

A.    The University of Washington's Paul G. Allen School of Computer
Science & Engineering Is a Top Computer Science School. ......................... 2

7

B.    UW Has a Holistic Admissions Policy and a Highly Competitive
Computer Science Program ......................................................................... 4

8

9

C.    Plaintiff Stanley Zhong, a NonResident Applicant, Was Denied
Admission to the Allen School .................................................................... 5

D.    Plaintiffs Allege that Stanley Zhong Was Denied Admission to the
Allen School Because of his Race ................................................................ 5

10

11

III.  LEGAL STANDARD .................................................................................... 6

12

A.    Standing and the Rule 12(b)(1) Standard .................................................... 6

13

B.    Rule 12(b)(6) Standard ............................................................................... 7

IV.   ARGUMENT ................................................................................................. 8

14

15

A.    Plaintiff Nan Zhong Does Not Have Standing and Should be
Dismissed from This Case Under Rule 12(b)(1). ......................................... 8

16

B.    Plaintiffs Lack Standing to Seek an Injunction Because Pro Se
Plaintiffs May Not Seek Relief on Behalf of Other Persons. ...................... 10

17

18

C.    Counts I and II Should Be Dismissed Because Plaintiffs Do Not P
lausibly Allege that UW Considers Race in Its Admissions Decisions or
Discriminates Against Asian-Americans in Those Decisions ...................... 10

19

1.    The Complaint makes numerous irrelevant allegations ...................... 11

20

2.    Even Plaintiffs' arguably relevant allegations do not plausibly
state a claim. ..................................................................................... 13

21

22

D.    Plaintiffs Fail To Plausibly Allege A Violation Of RCW 49.60.400 .......... 20

V.    CONCLUSION ............................................................................................ 21

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS
2:25-cv-00348-JLR

i

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Carovano*,
  851 F.2d 561 (2d Cir. 1988) .................................................................................16

*Allen v. Wright*,
  468 U.S. 737 (1984) ...........................................................................................10

*T.A. ex rel. Amador v. McSwain Union Elementary Sch. Dist.*,
  No. CV-F-08-1986-OWW/DLB, 2009 WL 1748793 (E.D. Cal. June 18,
  2009).....................................................................................................................16

*Barren v. Harrington*,
  152 F.3d 1193 (9th Cir. 1998)..............................................................................11

*Carroll v. Nakatani*,
  342 F.3d 934 (9th Cir. 2003)................................................................................10

*Corales v. Flagstar Bank, FSB*,
  822 F. Supp. 2d 1102 (W.D. Wash. 2011) .............................................................8

*Corner Computing Sols. v. Google LLC*,
  750 F. Supp. 3d 1208 (W.D. Wash. 2024) ..........................................................7, 8

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003)..............................................................................21

*Essah v. Governing Bd. of L.A. Unified Sch. Dist.*,
  No. EDCV 20-2628, 2023 WL 4304771 (C.D. Cal. Feb. 23, 2023)....................10

*Gamble v. Pac. Nw. Reg'l Council of Carpenters*,
  No. C14-455 RSM, 2015 WL 3442561 (W.D. Wash. May 28, 2015)..................16

*Gratz v. Bollinger*,
  539 U.S. 244 (2003) ..............................................................................................9

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010) ...................................................................................................5

*Hernandez v. Carpenter*,
  No. 2:23-CV-00250-SAB, 2023 WL 9112200 (E.D. Wash. Oct. 10, 2023) .........8

*Hong v. Read*,
  No. 8:19-CV-00086-RGK-JC, 2020 WL 7344828 (C.D. Cal. Oct. 26, 2020)....16

DEFENDANT'S MOTION TO DISMISS
2:25-cv-00348-JLR

- ii -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

*Hong v. Garcia*,
No. 21-55019, 2022 WL 2256326 (9th Cir. June 23, 2022) ................................16

*Hung Ha v. U.S. Att'y Gen.*,
No. C 09-5281 JL, 2010 WL 11583161 (N.D. Cal. Apr. 29, 2010)....................16

*Johns v. County of San Diego*,
114 F.3d 874 (9th Cir. 1997)......................................................................8, 10

*Joseph v. Boise State Univ.*,
998 F. Supp. 2d 928 (D. Idaho 2014), *aff'd*, 667 F. App'x 241 (9th Cir.
2016)...........................................................................................................11

*King v. County of Los Angeles*,
No. CV13-04813-SVW (AFM), 2015 WL 13917236 (C.D. Cal. Dec. 3,
2015)...........................................................................................................10

*Kwan v. SanMedica Int'l*,
854 F.3d 1088 (9th Cir. 2017) .........................................................................8

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .........................................................................................7

*Massey v. Biola Univ., Inc.*,
No. 2:19-CV-09626-CJC-JDE, 2020 WL 2476173 (C.D. Cal. Apr. 10,
2020)...........................................................................................................17

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ..........................................................................7

*Mont. Env't Info. Ctr. v. Stone-Manning*,
766 F.3d 1184 (9th Cir. 2014) ..........................................................................9

*Paige v. California*,
291 F.3d 1141 (9th Cir. 2002) ........................................................................15

*Scott v. Pasadena Unified Sch. Dist.*,
306 F.3d 646 (9th Cir. 2002) ............................................................................9

*Southard v. Ballard Marine Constr., Inc.*,
458 F. Supp. 3d 1298 (W.D. Wash. 2020) ........................................................7

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .........................................................................................7

*Steven v. Fed. Way Sch. Dist.*,
No. 82042-7-I, 2021 WL 5056044 (Wash. Ct. App. Nov. 1, 2021) .............20, 21

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

*Stewart v. Texas Tech University Health Sciences Center*,
    741 F. Supp. 3d 528, 537 (N.D. Tex. 2024) ...................................................17, 18

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    No. 1:14-cv-14176 (D. Mass. Nov. 17, 2014), ECF No. 1 ...................................19

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
    600 U.S. 181 (2023) ........................................................................... *passim*

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*,
    No. 1:20-CV-763-RP, 2024 WL 3666177 (W.D. Tex. July 15, 2024) ...............17

*Students for Fair Admissions v. U.S. Naval Acad.*,
    758 F. Supp. 3d 423 (D. Md. 2024) ...................................................................17

*Turner v. City & County of San Francisco*,
    788 F.3d 1206 (9th Cir. 2015) .............................................................................8

*Twede v. Univ. of Wash.*,
    309 F. Supp. 3d 886 (W.D. Wash. 2018) ...........................................................7

*Updike v. Multnomah County*,
    870 F.3d 939 (9th Cir. 2017) ..............................................................................7

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017) ............................................................................6

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...........................................................................................9

*Yusuf v. Vassar Coll.*,
    35 F.3d 709 (2d Cir. 1994) ...............................................................................16

**Statutes**

42 U.S.C. § 2000d ....................................................................................................10

Civil Rights Act of 1964 Title VI.................................................................... *passim*

Civil Rights Act of 1964 Title IX...............................................................................16

RCW 28B.15.067 ........................................................................................................3

RCW 49.60 *et seq.*..................................................................................6, 11, 13, 20

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) .............................................................................6, 7, 8, 10

Fed. R. Civ. P. 12(b)(6) ...................................................................................7, 13, 17

DEFENDANT'S MOTION TO DISMISS
2:25-cv-00348-JLR

Orrick, Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

FED. R. CIV. P. 8 ...................................................................................................................2

U.S. CONST. art. III ......................................................................................................2, 6, 7

U.S. CONST. amend. XIV § 1 ....................................................................................6, 10, 11

DEFENDANT'S MOTION TO DISMISS
2:25-cv-00348-JLR
- v -
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

# I.      INTRODUCTION

The University of Washington ("UW" or the "University") is a public institution whose funding comes, in significant part, from appropriations made by the State legislature.  State law requires the University to prioritize the admission of Washington residents.  The impact of this prioritization is more pronounced for UW's most capacity-constrained programs and, in particular, the Paul G. Allen School of Computer Science & Engineering (the "Allen School")— the nation's seventh-ranked computer science program—where 84 percent of students who were admitted as freshmen in 2023 were Washington residents.  While the general admission rate for Washington residents at the University was around 50% in 2023, it was around 25% for those who applied to the Allen School in 2023.  For non-Washington residents, the overall UW admission rate was 40%, and the admission rate to the Allen School was *less than 2%* in 2023. In 2023, only 83 non-Washington residents were direct admittees to the Allen School (out of 5,059 applicants).  Stanley Zhong, a California resident, applied for admission to the Allen School in 2023.  He was among the 98% of out-of-state applicants not accepted for admission.

Stanley, along with his father Nan, now brings this litigation claiming the reason he was denied admission to the Allen School is because he is Asian-American.  The Complaint contains no allegations to bear out such a claim.  Plaintiffs do not identify how or where in UW's admissions procedures race is considered.  Nor do Plaintiffs provide any statistics demonstrating racial balancing or otherwise evidencing discrimination against Asian-Americans or any other group at UW.  Their discrimination contention is particularly suspect given that, over 26 years ago, Washington voters approved a ban on the use of race in university admissions and UW's admissions policies have complied with that ban ever since.

As to Stanley specifically, Plaintiffs offer no allegations that, notwithstanding the Allen School's exceedingly rigorous admissions criteria for nonresident applicants, Stanley would have been admitted but for his race.  Instead, the Complaint focuses on allegations of racial preferences at *other universities*, or in faculty hiring at UW, not the University's admissions practices.  That is in contrast with the recent Supreme Court decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College* ("*SFFA*"), 600 U.S. 181 (2023),

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

where Plaintiffs pled both where and how race was injected into the Harvard and the University of North Carolina admissions procedures and cited statistics suggesting those universities employed racial balancing.  Here, Plaintiffs' allegations boil down to his assertions that he is Asian-American, he was a highly-qualified applicant, and he was not among the 83 non-Washington-resident applicants offered admission to the Allen School in 2023.  He does not even attempt to show that his academic qualifications were superior to other out-of-state admittees or that out-of-state Asian-Americans are underrepresented in the Allen School (they are not, as 51.8% of undergraduates in the Allen School are Asian-American).  In fact, the Complaint itself betrays Stanley's allegations in that it discloses Stanley was rejected not just from UW but **sixteen** of the eighteen other undergraduate computer science programs to which he applied (Compl. Ex. 27), several of which are ranked below UW and many of which do not prioritize in-state residents (as UW does).  No court has permitted a plaintiff's complaint to survive a motion to dismiss when it is predicated upon the kind of bare-bones allegations made here.

At bottom, Plaintiffs ask this Court to take college admissions decisions out of the hands of universities and put them in the lap of the judiciary, not only at UW, but nationwide, by allowing any rejected applicant to bring a racial discrimination suit based on little more than the fact that he was rejected from his preferred university and his own *ipse dixit*.  Article III standing and Rule 8 pleading standards serve a gatekeeping function to prevent precisely this outcome.  Accordingly, this Court should decline Plaintiffs' invitation and dismiss the Complaint with prejudice.

## II.    BACKGROUND

### A.    The University of Washington's Paul G. Allen School of Computer Science & Engineering Is a Top Computer Science School.

The University of Washington is an internationally renowned institution.  *See* Def. Ex.

DEFENDANT'S MOTION TO DISMISS
2:25-cv-00348-JLR
- 2 -
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

1.[1] Founded in 1861, UW comprises three campuses in Seattle, Bothell, and Tacoma.[2]  The University is responsible for educating more than 60,000 students each year in its 16 schools and colleges.[3]  Because the University is funded with the tax revenue collected from Washington residents, the state legislature has asked the University to prioritize the admission of Washington residents.  *See* RCW 28B.15.067.  Over 72% of UW's freshmen and transfers in 2023 were Washington residents, [4] and the number was even higher—74%—in 2024.[5]

At issue in this case is a particular school at UW, the "Allen School."  Compl. ¶ 35 (noting that Stanley applied to the "undergraduate Computer Science program at the University of Washington").  Due to its excellence and status as the seventh-best computer science program in the country, [6] the Allen School is "capacity-constrained," meaning that "the number of interested students significantly exceeds the number of student places that are available."[7]  Historically, the Allen School enrolls approximately 630 new students each year from a number of pathways: freshman applicants (like Stanley), transfer student applicants, and applicants who are current UW students.[8]  In 2023, the year Stanley Zhong applied, 2,155 Washington state residents applied to UW seeking admission to the Allen School as freshmen.[9]  Of those 2,155 applicants, 569 or 26% were accepted.[10]  Also, in 2023, 5,059 non-Washington state residents (like Stanley) applied to the Allen School as freshmen, and only 83 or 2% were accepted.[11]  This ratio of resident and nonresident students admitted to the Allen School is consistent with UW's commitment as a public institution to prioritize the admission of Washington state residents.[12]

---

[1] The Court may consider the contents of the University's website when deciding this motion to dismiss for several reasons.  *See* Defendant's simultaneously-filed Request for Judicial Notice ("RJN").  All citations to "Def. Ex." reference the exhibits attached to the Declaration of Robert M. McKenna in support of Defendant's RJN.

[2] Def. Ex. 2.

[3] Def. Ex. 2; Def. Ex. 3.

[4] Def. Ex. 4.

[5] Def. Ex. 5.

[6] Def. Ex. 6.

[7] Def. Ex. 7.

[8] *Id.*

[9] Def. Ex. 8.

[10] *Id.*

[11] *Id.*

[12] *See id.* ("The University of Washington is a public institution, which means that funding for the university comes partially from Washington State.  For this reason, the University of Washington offers priority in admissions to

**B.**     <u>UW Has a Holistic Admissions Policy and a Highly Competitive Computer</u>
<u>Science Program.</u>

Washington law and UW policies have long prohibited consideration of race in public college admissions. Enacted in 1998 through Initiative 200, the Washington Law Against Discrimination ("WLAD") prohibits public schools from discriminating against applicants based on race and other protected characteristics.

Over the years, UW has developed its holistic admissions policy. Under this approach, UW considers an applicant's preparation and performance, personal achievements, and characteristics which may include:[13]

- Achieving an overall strong level of academic achievement, as demonstrated by grades, and by depth, breadth, and rigor of curriculum;
- Taking advantage of college-preparatory courses during high school, such as Advanced Placement (AP), International Baccalaureate (IB), Running Start or college in the high school; or academic subjects beyond the minimum required for college entrance;
- Taking full advantage of the senior year;
- Demonstrating a positive grade trend;
- Demonstrating a commitment to community service and leadership;
- Exercising significant responsibility in a family, community, employment situation or through activities;
- Attaining a college-preparatory education despite socioeconomic disadvantage (Washington state residents only); and
- Demonstrating unique perspectives or experiences.[14]

Every undergraduate applicant receives this holistic review, including applicants to the Allen School.[15]

---

residents of Washington State.… It is important to note that Allen School DTM admission is designed primarily for Washington state resident students—typically, around one quarter of Washington resident applicants are offered admission to the Allen School directly as a first-year.").

[13] Def. Ex. 9.

[14] *Id.*

[15] Def. Ex. 8.

DEFENDANT'S MOTION TO DISMISS       - 4 -
2:25-cv-00348-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

## C. **Plaintiff Stanley Zhong, a Nonresident Applicant, Was Denied Admission to the Allen School.**

Stanley Zhong is an Asian-American who was born in 2005 and resides in California. Compl. ¶ 6.[16]  Stanley's parents are first-generation immigrants from China. *Id.* ¶¶ 6, 43. Stanley alleges he is a self-taught programmer with numerous impressive achievements. *Id.* ¶¶ 7-13, 15-17.  According to the Complaint, Stanley's high school GPA is 3.97 (unweighted) and 4.42 (weighted). *Id.* ¶ 23.  He reportedly scored 1590 on the SAT and was a National Merit Scholarship finalist.[17]  *Id.* ¶¶ 28-29.  His high school is ranked #14 in California and #135 nationally. *Id.* ¶ 25.  Stanley alleges that before turning 18 years old, he received a full-time job offer from Google for a Ph.D. level position. *Id.* ¶ 18.

In 2023, Stanley applied to the undergraduate Computer Science Program at the Allen School for fall admission. *Id.* ¶ 35.  His application was rejected. *Id.*  Plaintiff Nan Zhong is Stanley's father and, as a basis for his status as a plaintiff in this litigation, claims he has other children that intend to apply for admission at UW (though Plaintiff Nan Zhong does not allege those children intend to apply to the Allen School).[18]  *Id.* ¶ 46.

## D. **Plaintiffs Allege that Stanley Zhong Was Denied Admission to the Allen School Because of his Race.**

Plaintiffs bring suit alleging that UW engages in "discriminatory" practices that disadvantage highly qualified Asian-American applicants, including Stanley.  Compl. ¶ 39. Plaintiffs allege that UW's website claims that "diversity, equity, inclusion, and belonging are integral to excellence." *Id.* ¶ 84.  Further, relying only on Stanley's high school grades, Plaintiffs claim that UW's rejection of highly qualified applicants like Stanley suggests UW has jettisoned genuine academic excellence in favor of ideological priorities. *Id.*

Regarding UW's "holistic" admissions framework, Plaintiffs claim (without citation)

---

[16] For the purposes of this Motion to Dismiss, facts plausibly alleged in the Complaint are assumed to be true. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 5 (2010) ("This case arises from a motion to dismiss, and so we accept as true the factual allegations in the City's second amended complaint.").

[17] Approximately, 15,000 students annually are chosen as national merit finalists. *See* Def. Ex. 10.

[18] The Court granted Plaintiffs' motion to voluntarily dismiss the organizational Plaintiff SWORD on June 2, 2025. ECF No. 12; 16.  Accordingly, SWORD's standing and claims are not addressed in this Motion.

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

that it lacks transparency because SAT scores are not published, and lacks independent third-party oversight and accountability, which together enable the use of racial proxies to achieve racial balancing. *Id.* ¶¶ 91-92, 102, 112. Plaintiffs allege (again without citation) that implementing a "test-optional" approach deliberately excludes from consideration objective metrics that are important to assess academic preparedness in science, technology, engineer, and mathematics ("STEM") majors. *Id.* ¶ 105.

Plaintiffs do not cite any statistical analyses of the Allen School's freshman class, UW's freshman class, or UW as a whole that purport to show that Asian-Americans are underrepresented. Indeed, Plaintiffs' only allegation that comes close to discussing representation is in two paragraphs which allege that, although Washington's Asian-American population has increased, "Asian enrollment at the University of Washington has declined in recent years," from 28.7% in 2013 to 23% in 2024. *Id.* ¶¶ 109-10; *see also id.* Exs. 54-56. Though Plaintiff is not a Washington resident, he offers no comparable allegations regarding out-of-state admittees generally, much less admittees to the Allen School, nor any allegation about the number of applicants to UW or the Allen School.

Plaintiffs point to statistics they claim show that Asian-Americans are underrepresented at UW. *Id.* Exs. 54-56. However, 51.8% of the undergraduates enrolled in the Allen School are Asian-American,[19] a number that far exceeds the percentage of the population of Washington state that is Asian-American (9.5%), *see* Compl. ¶ 109; Compl. Ex. 54.

Plaintiffs allege violations of the Fourteenth Amendment's Equal Protection Clause (Count I), Title VI of the Civil Rights Act of 1964 (Count II), and RCW 49.60.400 (Count III). They seek declaratory and injunctive relief, and monetary damages. *Id.* ¶ 150-55.

## III.    LEGAL STANDARD

### A.    Standing and the Rule 12(b)(1) Standard

Article III of the U.S. Constitution "limits federal judicial power to 'Cases' and 'Controversies.'" *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042 (9th Cir. 2017) (quoting U.S. Const. art. III, § 2, cl. 1.). "[S]tanding is an essential and unchanging part of the

---

[19] Def. Ex. 11.

case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To have standing to sue in federal court, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The injury must be actual or imminent, not hypothetical or speculative. *Lujan*, 504 U.S. at 560. "[S]tanding for injunctive relief requires that a plaintiff show a real and immediate threat of repeated injury." *Updike v. Multnomah County*, 870 F.3d 939, 947 (9th Cir. 2017) (internal quotation marks omitted). Plaintiffs bear the burden of establishing the elements of standing. *Lujan*, 504 U.S. at 561.

Challenges to Article III standing are evaluated under Rule 12(b)(1) for lack of subject matter jurisdiction. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "Federal courts are presumed to lack jurisdiction, and on a motion to dismiss pursuant to … 12(b)(1) the burden of proof is on the plaintiff to establish subject matter jurisdiction." *Southard v. Ballard Marine Constr., Inc.*, 458 F. Supp. 3d 1298, 1303 (W.D. Wash. 2020) (citing *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989)). Where a defendant makes a facial challenge to jurisdiction and asserts that the complaint's allegations are insufficient on their face, a court takes the factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Twede v. Univ. of Wash.*, 309 F. Supp. 3d 886, 893 (W.D. Wash. 2018). "This is not to say that plaintiff may rely on a bare legal conclusion to assert injury-in-fact, or engage in an ingenious academic exercise in the conceivable to explain how defendants' actions caused his injury." *Id.* (internal quotation marks omitted).

**B.**    **Rule 12(b)(6) Standard**

Under Rule 12(b)(6), a court must dismiss a complaint if the plaintiff fails "to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12; *Corner Computing Sols. v. Google LLC*, 750 F. Supp. 3d 1208, 1212 (W.D. Wash. 2024). "In reviewing a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true." *Corner Computing*, 750 F. Supp. 3d at 1212. However, the complaint must present a "'claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

1    Conclusory legal statements and unwarranted inferences are not enough to prevent dismissal.

2    *See Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). Assuming the veracity of

3    the well-pleaded allegations, the court then considers whether the allegations "plausibly give

4    rise to an entitlement to relief." *Id.* The plausibility standard requires more than a "sheer

5    possibility that a defendant has acted unlawfully." *See Turner v. City & County of San

6    Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015). A claim is considered plausible when it

7    includes sufficient facts for the court to reasonably infer the defendant's liability for the alleged

8    conduct. *Id.*

9         Although a complaint filed by a pro se plaintiff must be liberally construed and "held to

10   less stringent standards" than those used for formal pleadings drafted by lawyers, even a pro se

11   plaintiff must plead the essential elements of the claim, as the court will "not supply essential

12   elements of [a] claim." *See Corner Computing*, 750 F. Supp. 3d at 1213 (quotation marks

13   omitted). Pro se plaintiffs are still required to allege specific facts to support their assertions.

14   *See Corales v. Flagstar Bank, FSB*, 822 F. Supp. 2d 1102, 1113 (W.D. Wash. 2011).

15   **IV.  ARGUMENT**

16       **A.**    **<u>Plaintiff Nan Zhong Lacks Standing and Should be Dismissed from This</u>**

17              **<u>Case Under Rule 12(b)(1).</u>**

18        Nan Zhong, Stanley Zhong's father, does not allege any concrete and particularized

19   injury to himself. Rather, he alleges that his other "children intend to apply for admission to

20   UW but will be denied the opportunity to compete on equal footing with other applicants due to

21   UW's discriminatory admissions policies." Compl. ¶ 46. He also claims that "UW's

22   discriminatory policies" caused him "emotional distress." *Id.* ¶ 45. Nan lacks standing for two

23   reasons.

24        ***First***, Nan does not have standing to assert claims on behalf of his other children.

25   "[C]onstitutional claims are personal and cannot be asserted vicariously. While a non-attorney

26   may appear pro se on his own behalf, he has no authority to appear as an attorney for others than

27   himself," including one's own children. *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th

28   Cir. 1997) (internal quotation marks and citation omitted); *accord Hernandez v. Carpenter*, No.

1    2:23-CV-00250-SAB, 2023 WL 9112200, at *2 (E.D. Wash. Oct. 10, 2023) ("To the extent

2    Petitioner is attempting to assert or vindicate the rights of other persons in this action, he may

3    not do so."); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[P]laintiff generally must

4    assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or

5    interests of third parties.").

6    **Second**, Nan's allegations are speculative, and the alleged injury is not actual or

7    imminent.    In lawsuits challenging a university's alleged use of race in undergraduate

8    admissions, the "injury in fact" that plaintiffs must establish is the "denial of equal treatment

9    resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit."

10   *Gratz v. Bollinger*, 539 U.S. 244, 245 (2003).  Thus, a plaintiff must "demonstrate that [she] is

11   able and ready to perform and that a discriminatory policy prevents [her] from doing so on an

12   equal basis." *Id.*  Even under this standard, the mere hypothetical existence of a racial barrier is

13   not enough; "a plaintiff [must still] show[] that she has been, or is genuinely threatened with the

14   likelihood of being, subjected to such a barrier."  *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d

15   646, 657 (9th Cir. 2002) (denying standing because plaintiff had failed to demonstrate an

16   imminent threat of enforcement).

17   Nan does not allege what his other children's qualifications are or any facts that predict

18   with any certainty whether UW will accept or reject their applications nor, if they are rejected,

19   the basis for this hypothetical rejection.  He has not shown that they are "able and ready to

20   perform" at UW.  *Gratz*, 539 U.S. at 245.  His other children have not applied to UW, let alone

21   been rejected from any program, and any injury they might suffer is nothing more than an

22   abstraction that "may never materialize." *Mont. Env't Info. Ctr. v. Stone-Manning*, 766 F.3d

23   1184, 1190 (9th Cir. 2014).  Nothing in Nan's allegations even suggest they will apply to UW's

24   Allen School.  Thus, Nan also lacks standing because any injury to his other children is purely

25   speculative.

26   As for Nan's allegation that he has suffered "emotional distress" because of UW's

27   alleged discrimination, that is not a cognizable injury sufficient to give Nan standing.  While

28   "noneconomic injury is … sufficient in some circumstances to support standing … such injury

1    accords a basis for standing only to those persons who are *personally denied equal treatment* by

2    the challenged discriminatory conduct." *Allen v. Wright*, 468 U.S. 737, 755 (1984) (emphasis

3    added) (quotation marks omitted); *accord Carroll v. Nakatani*, 342 F.3d 934, 946 (9th Cir. 2003)

4    ("Even if a government actor discriminates on the basis of race, only those personally denied

5    equal treatment have standing to seek relief.").

6        Because Nan lacks standing to bring these claims, the Court should dismiss Nan's claims

7    from this case under Rule 12(b)(1).

8        **B.    Plaintiffs Lack Standing to Pursue Their Proposed Injunctive Relief.**

9        Plaintiffs seek injunctive relief that goes far beyond Stanley's application and rejection

10   to the Allen School.  They seek an injunction requiring the University to, among other things,

11   issue an apology to Asian-American applicants, fire admissions administrators, create an

12   admissions oversight board and fund recurring admissions audits, and conduct mandatory

13   training.  Compl. ¶¶ 150-53.  This relief, on its face, would ostensibly impact all Asian-

14   American applicants in the future (and others), not just Plaintiffs.  However, because Plaintiffs

15   are "proceeding pro se [they do] not have standing to seek injunctive relief on behalf of other

16   persons."  *Essah v. Governing Bd. of L.A. Unified Sch. Dist.*, No. EDCV 20-2628, 2023 WL

17   4304771, at *12 n.6 (C.D. Cal. Feb. 23, 2023) (rejecting pro se plaintiff's requested injunction

18   that would benefit "all LAUSD teachers."  (citing *Johns*, 114 F.3d at 876)), *report and*

19   *recommendation adopted*, No. 2:20-cv-02628-FWS-AGR, 2023 WL 4295835 (C.D. Cal. June

20   30, 2023); *accord King v. County of Los Angeles*, No. CV13-04813-SVW (AFM), 2015 WL

21   13917236, at *10 (C.D. Cal. Dec. 3, 2015) (dismissing prayer for injunctive relief as "moot"

22   because pro se plaintiff was seeking relief that would only benefit others).

23       **C.    Counts I and II Should Be Dismissed Because Plaintiffs Do Not Plausibly**

24           **Allege that UW Considers Race in Its Admissions Decisions or**

25           **Discriminates Against Asian-Americans in Those Decisions.**

26       Plaintiffs fail to state a plausible claim of discrimination under either the Fourteenth

27   Amendment's Equal Protection Clause (Count I) or Title VI of the Civil Rights Act of 1964,

28   codified at 42 U.S.C. § 2000d (Count II).  Both counts require the same showing and therefore

1    stand or fall together.  *See SFFA*, 600 U.S. at 198 n.2 ("We have explained that discrimination

2    that violates the Equal Protection Clause of the Fourteenth Amendment committed by an

3    institution that accepts federal funds also constitutes a violation of Title VI.").  To state a claim

4    under the Equal Protection Clause or Title VI, Plaintiffs must show that UW "acted with an

5    intent or purpose to discriminate against the plaintiff based upon membership in a protected

6    class."  *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  To be sure, in *SFFA*,

7    the Supreme Court explained that the use of race as a factor in undergraduate admissions satisfies

8    that standard.  600 U.S. at 230-31 ("[T]he student must be treated based on his or her experiences

9    an individual—not on the basis of race.").  But contrary to the story told in the Complaint, *SFFA*

10   did not herald a change in Washington state law.  For nearly 30 years, UW's admissions policies

11   have been subject to Initiative 200 ("I-200").  I-200 provides that "[t]he state [and, by extension,

12   UW] shall not discriminate against, or grant preferential treatment to, any individual or group

13   on the basis of race, sex, color, ethnicity, or national origin in the operation of … public

14   education."  RCW 49.60.400(1).  As the President of the University of Washington explained

15   shortly after the Supreme Court decided *SFFA*, the decision was expected "to have little impact

16   on the UW's admissions practices, given that I-200 already prohibited the use of race as a factor

17   in hiring or admissions by Washington's public universities."  Compl. Ex. 52.  Accordingly, in

18   order to plausibly allege that UW discriminates against Asian-Americans in its undergraduate

19   admissions, Plaintiffs must not only allege that UW considers an applicant's race as a plus-factor

20   but must do so against a backdrop that has prohibited UW from discriminating on the basis of

21   race for admissions for over 25 years.  Plaintiffs' bare-bones allegations simply do not clear the

22   plausibility bar.  *Joseph v. Boise State Univ.*, 998 F. Supp. 2d 928, 945 (D. Idaho 2014)

23   ("Although the allegations suggest the possibility of discrimination, the statements are primarily

24   conclusory.  While at some level the allegations are consistent with a viable claim of race

25   discrimination, they only suggest a possibility which is not enough." (quotation marks omitted)),

26   *aff'd*, 667 F. App'x 241 (9th Cir. 2016).

27              **1.    The Complaint makes numerous irrelevant allegations.**

28          Plaintiffs' 155-paragraph Complaint makes surprisingly few allegations about UW or its

DEFENDANT'S MOTION TO DISMISS                              - 11 -             ORRICK, HERRINGTON & SUTCLIFFE LLP
2:25-cv-00348-JLR                                                                      401 Union Street, Suite 3300
                                                                                       Seattle, Washington  98101-2668
                                                                                           +1 206 839 4300

undergraduate admissions process and makes no allegations at all about the Allen School's admissions process. The Complaint's many irrelevant allegations can be dispensed with easily. First, most of the Complaint alleges discrimination against Asian-Americans by *other* universities, with a particular focus on (strangely) the University of California. Compl. ¶¶ 69-83, 85-94. Clearly none of these allegations is relevant to the Plaintiffs' claims against UW.

Perhaps the closest Plaintiffs come to making allegations specific to UW do not concern admissions at all but rather an entirely distinct process: hiring. Specifically, Plaintiffs claim alleged discrimination by UW faculty (not the Office of Admissions) in hiring a faculty member in a different department (psychology, not computer science). Compl. ¶¶ 106-07. The assertion is irrelevant to Plaintiffs' claim of racial discrimination in *admissions*. Furthermore, unrelated isolated incidents do nothing to substantiate Plaintiffs' claims of a *policy* of discrimination. In any event, the pleaded details of this allegation show that UW takes claims of discrimination seriously and works quickly to remedy any improper conduct: the materials Plaintiffs cite show that UW took prompt action against the department and "announced on its website that the psychology department is now 'barred from conducting searches for tenured and tenure-track faculty positions' for at least two years, 'subject to review by the Provost's Office.' It also said the department will 'undergo a comprehensive review and revision of its hiring processes,' and all department members 'will receive training on how to conduct searches consistent with law and policy.'" Compl. Ex. 53[20]; *see* Compl. ¶ 106. Plaintiffs' allegations suggest precisely the opposite of their claims; they show UW takes seriously the prohibition on racial discrimination.

Plaintiffs also misconstrue UW's response to the Supreme Court's decision in *SFFA v. Harvard*. The Complaint alleges that "UW's Presidential Blog published an article titled Affirmative action ruling won't change [UW's] values or [UW's] mission. It stated that the ruling 'created much disappointment and concern' [and] signaled the university's continued desire to consider race in admissions, despite the Court's decision." Compl. ¶ 98 (emphasis omitted). This allegation—which is nothing more than Plaintiffs' take on a press release—

---

[20] Plaintiffs' Exhibit 53 includes only the abstract of the article they cite; Defendants provide the full article at Def. Ex. 12.

DEFENDANT'S MOTION TO DISMISS
2:25-cv-00348-JLR

- 12 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

1   ignores the fact that the rule announced in *SFFA* has effectively been the law in Washington

2   State since I-200 was passed in 1998.  RCW 49.60 *et al.*  So, UW's President stating that the

3   Court's ruling "won't change our values or our mission" is not plausibly interpreted as a

4   statement "signal[ing] the university's continued desire to consider race in admissions"; rather,

5   it's a confirmation that UW did not need to change its policies because UW already prohibits

6   affirmative action in accordance with Washington law.

7                **2.      Even Plaintiffs' arguably relevant allegations do not plausibly state**

8                **a claim.**

9           When the Complaint is stripped of its irrelevant allegations, what's left is Plaintiffs' *ipse*

10  *dixit* that UW's rejection of Stanley "defies common sense" and, thus, must be the result of racial

11  discrimination.  Compl. ¶ 67.  But Plaintiffs' remaining allegations provide very little support

12  for Plaintiffs' claims, and certainly not enough support to meet the Rule 12(b)(6) plausibility

13  requirement.  The entirety of Plaintiffs' supporting allegations reduce to (1) that Stanley was a

14  high-performing Asian-American high school student who was not among the roughly 2%[21] of

15  nonresident freshman applicants admitted to the Allen School in 2023, Compl. ¶¶ 6-40; and (2)

16  that there has been an increase in the state of Washington's Asian-American population with no

17  corresponding increase in the Asian-American freshman enrollment at UW, Compl. ¶¶ 109-11.

18  Those allegations are insufficient to plausibly allege that UW considers race in its admissions

19  process at all, let alone that UW has a policy of discrimination against Asian-Americans.  *SFFA*,

20  600 U.S. at 213 (providing that the relevant inquiry is whether university admissions processes

21  "comply with strict scrutiny" or "use race as a stereotype or negative").

22          ***First***, the fact that one applicant from California who is Asian-American was rejected

23  from a program where only 83 nonresident applicants from across the entire country were

24  admitted does not, without more, state a claim for racial discrimination.  Indeed, if a racial

25  discrimination claim could be stated simply because a student was not accepted to a university

26  or program of his choice, innumerable applicants would be able to bring such claims every year,

27  miring universities (and the courts) in endless litigation.  A plaintiff making a claim of racial

28  _____
    [21] Def. Ex. 13.

1   discrimination needs much more: a plausible allegation of a race-conscious admissions policy

2   or circumstantial evidence of such.  *See, e.g.*, *SFFA*, 600 U.S. at 195 (noting the lower court

3   finding that "race is a determinative tip for a significant percentage of all admitted African

4   American and Hispanic applicants" (quotation marks omitted)); *id.* at 218 ("Harvard's

5   consideration of race has led to an 11.1% decrease in the number of Asian-Americans admitted

6   to Harvard"); *id.* at 222 (relying on statistical analysis showing Harvard's "numerical

7   commitment" to racial balancing).  Plaintiffs fail to allege the existence of any such evidence.

8   That is particularly concerning where Plaintiffs' own materials show UW's decision to not admit

9   Stanley in 2023 was not anomalous: ***sixteen*** of the eighteen programs to which Stanley applied

10  denied him admission, including many that, unlike UW, do not prioritize in-state residents.

11  Compl. Ex. 27.

12      Plaintiffs' allegations that UW's holistic admissions policy "lacks transparency,

13  independent third-party oversight and accountability," *id.* ¶ 102, demonstrate why the Complaint

14  fails to state a claim.  Not only are the allegations speculative, they are also wrong:  UW provides

15  details about its holistic admissions policy on its website.[22]  One of the factors UW considers as

16  part of that holistic policy is whether an applicant demonstrates a "strong level of academic

17  achievement, as demonstrated by grades."  There is no factor that considers race in this policy—

18  understandably so, as Washington has prohibited race-based admissions policies since the

19  1990s.  Other factors include:

20      • Demonstrating a commitment to community service and leadership;

21      • Exercising significant responsibility in a family, community, employment situation
        or through activities;

23      • Attaining a college-preparatory education despite socioeconomic disadvantage
        (Washington state residents only); and

25      • Demonstrating unique perspectives or experiences.[23]

26      Without detailing how Stanley's endeavors, if any, align with these factors, Plaintiffs

27

28  [22] Def. Ex. 9.
    [23] *Id.*

DEFENDANT'S MOTION TO DISMISS
2:25-cv-00348-JLR

- 14 -

simply note Stanley's academic achievements, including his SAT score, and (ignoring most of the above factors) complain that, based on those data alone, the rejection of his application is "bizarre[]."   Compl. ¶ 67.   But to suggest his rejection is "bizarre" requires a basis for comparison.   Plaintiffs set forth none.   Again, Plaintiffs' own allegations suggest his rejection by UW was not "bizarre" or an aberration:   sixteen other competitive universities also rejected Stanley's application.

*Second*, Plaintiffs' allegation that the proportion of Asian-American Washington residents has increased does not support their claim of discrimination.   An increase in the Asian-American *population* of Washington state says nothing about the number of competitive Asian-American *applicants* to the Allen School.[24]   Furthermore, even if the alleged mismatch between the increased Asian-American population in Washington and non-corresponding change in Asian-American admissions to UW (based on statistics from only two years) could somehow bear on an Equal Protection or Title VI claim, it is deeply attenuated by Plaintiffs' claims here because (1) Stanley is not a resident of Washington state and the alleged mismatch at most, claims that more Asian-Americans who *are* Washington state residents (unlike Stanley) should have been admitted, and (2) Stanley was competing against a different pool of *nonresident* applicants.   Furthermore, Plaintiffs compare the increased Asian-American population to Asian-American admittance to UW generally, not to the admittance rate to the highly competitive Allen School.   Compl. ¶¶ 109-11; *see generally Paige v. California*, 291 F.3d 1141, 1145-47 (9th Cir. 2002) (cautioning courts when looking at statistical evidence of a disparate racial impact to use the correct "comparative group").

Putting aside the many faults in Plaintiffs' slapdash efforts at statistics, as a matter of fact, 51.8% of all Allen School undergraduates today are Asian-American.[25]   Plaintiffs themselves allege that only 9.4% of Washington residents are Asian-American.   Compl. Ex. 54.

---

[24] The conclusion Plaintiffs ask the Court to draw—that an increase in the Asian-American population of Washington State without a corresponding increase in Asian-American enrollment in the Allen School or UW—is based only in supposition.   Plaintiffs not only have no allegation about the number of Asian-American applicants to UW, they also have no allegation about the number of admitted Asian-American applicants, nor the number of admitted Asian-American applicants that chose to go elsewhere or chose not to go to college at all.

[25] Def. Ex. 11.

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

Thus, far from the University's admissions process discriminating against Asian-American applicants, Asian-Americans are exceedingly well represented in the Allen School.  It is difficult to imagine how a claim of racial discrimination can survive such stark numbers.

Pre-*SFFA* and outside the university-admissions context, courts regularly dismiss racial discrimination claims that relied on bare-bones allegations.  *See, e.g.*, *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) ("The naked allegation that appellees 'selectively enforc[ed] the College rules … against plaintiffs … because they are black [or] Latin' is too conclusory to survive a motion to dismiss." (alterations in original)); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994) ("A plaintiff alleging racial or gender discrimination by a university must do more than recite conclusory assertions.  In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent."); *Hung Ha v. U.S. Att'y Gen.*, No. C 09-5281 JL, 2010 WL 11583161, at *5 (N.D. Cal. Apr. 29, 2010) ("[Plaintiff] likewise fails to specifically allege events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.  This claim should be dismissed." (internal citation omitted)); *T.A. ex rel. Amador v. McSwain Union Elementary Sch. Dist.*, No. CV-F-08-1986-OWW/DLB, 2009 WL 1748793, at *10 (E.D. Cal. June 18, 2009) ("The allegations are conclusory and limited to the elements only.  Plaintiff fails to allege specific facts from which it may be inferred that she was treated differently from others similarly situated and that her unequal treatment was based on an impermissible classification."); *Hong v. Read*, No. 8:19-CV-00086-RGK-JC, 2020 WL 7344828, at *21 (C.D. Cal. Oct. 26, 2020) (dismissing plaintiff's discrimination claims under Title VI and Title IX where plaintiff did "not allege any non-conclusory facts that even suggest discrimination on the basis of sex, race, ethnicity, or any other basis"), *report and recommendation adopted*, No. 8:19-CV-00086-RGK-JC, 2020 WL 7488913 (C.D. Cal. Dec. 18, 2020), *aff'd sub nom. Hong v. Garcia*, No. 21-55019, 2022 WL 2256326 (9th Cir. June 23, 2022); *Gamble v. Pac. Nw. Reg'l Council of Carpenters*, No. C14-455 RSM, 2015 WL 3442561, at *5 (W.D. Wash. May 28, 2015) (dismissing plaintiff's Title VI discrimination claim where

"[p]laintiff's threadbare allegations and personal belief that the [defendant] discriminated against him on the basis of his race are purely conclusory and are therefore insufficient to state a 'plausible claim to relief.'" (internal citation omitted)); *Massey v. Biola Univ., Inc.*, No. 2:19-CV-09626-CJC-JDE, 2020 WL 2476173, at *7 (C.D. Cal. Apr. 10, 2020) (granting defendant's motion to dismiss where plaintiff did "not allege any facts suggesting that she was discriminated against on the basis of race, color, or national origin" and "[h]er personal belief without any supporting factual allegations …[were] insufficient to state a Title VI claim"), *report and recommendation adopted*, No. 2:19-CV-09626-CJC-JDE, 2020 WL 2468765 (C.D. Cal. May 13, 2020).

While there are only a few post-*SFFA* decisions regarding higher education admissions, none has permitted a plaintiff to proceed beyond a motion to dismiss based solely on the plaintiff's allegation that he was qualified but that he was denied admission. All have required statistical support for a plaintiff's allegations of a discriminatory admissions practice in order to meet the plausibility requirements of 12(b)(6).[26]  For example, in *Stewart v. Texas Tech University Health Sciences Center*, the plaintiff's allegations survived a motion to dismiss only because they were grounded in admissions data he gathered through his investigation of open records and, accordingly, his allegation that he was rejected from defendant medical schools "while over 450 lesser qualified minority students … were offered admission" was—at least plausibly—supported by the statistical analysis he provided in his complaint. 741 F. Supp. 3d 528, 537 (N.D. Tex. 2024). The *Stewart* plaintiff identified "records [that] show[ed] 'the median and mean grade-point averages and MCAT scores of admitted black and Hispanic students [were] significantly lower than the grade-point averages and MCAT scores of admitted white and Asian students.'" *Id.*  The *Stewart* court found that "these statistics ma[d]e it plausible that at least some black and Hispanic applicants were held to lower academic standards and were admitted despite their lower MCAT scores based on their race" and, based on that statistical

---

[26] Beyond *Stewart* discussed here, other post-*SFFA* university admissions cases have been dismissed for mootness due to a change in university policy, *see Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, No. 1:20-CV-763-RP, 2024 WL 3666177, at *7 (W.D. Tex. July 15, 2024); or fall into the Supreme Court's exception for military academies in *SFFA*, *see Students for Fair Admissions v. U.S. Naval Acad.*, 758 F. Supp. 3d 423, 526-27 (D. Md. 2024).

analysis, allowed the plaintiff to get past a motion to dismiss. *Id.* at 553; *see also id.* at 554 (noting that the statistics "permit[] a reasonable inference that if the plaintiff had been black or Hispanic, he likely would have received a more favorable consideration"). Plaintiffs here offer nothing even approximating the statistical analysis that plausibly alleged discriminatory admissions in *Stewart*. Here, there are no allegations whatsoever regarding the qualifications of any admitted students nor how those qualifications compare to Stanley's qualifications.

The record here is not, however, devoid of admissions statistics. But these statistics do not support Plaintiffs' claim, which is likely why they were left out of the Complaint. Plaintiffs selectively refer to the portions of UW's website they consider helpful to their claims. But the website also discloses admissions statistics the school at issue: UW's Allen School. Those statistics provide insight regarding the high rate of rejections and the reasons for those rejections. The Allen School's website clearly states that UW "offers priority in admissions to residents of Washington State" and that the school rejects "hundreds of students with… high grades."[27] For example, the Allen School's 2023 admissions statistics note that 2,155 Washington residents applied to the program, but only 569 were accepted—that is an acceptance rate of 26%.[28] For non-residents like Stanley, 5,059 applicants applied with *only 83 admitted*—that is, *2% of the applicants*.[29] That means 49 of every 50 nonresident applicants to the Allen School were rejected. This is among the lowest acceptance rates of any school in the country, yet Plaintiffs suggest that UW discriminated based on race with no facts whatsoever to support their hefty allegation.

Because the Allen School's Computer Science program is "capacity-constrained"[30] and exceedingly popular, UW encourages freshmen applicants to indicate a preference for a major other than Computer Science or Computer Engineering so that, if they are not admitted to the Allen School, they can still enroll in another UW program. The UW's admissions website makes

---

[27] Def. Ex. 8.

[28] Def. Ex. 8.

[29] *Id.*

[30] As the UW website explains, the Computer Science program is "capacity-constrained: the number of interested students significantly exceeds the number of student places that are available. (We can't expand arbitrarily. Providing a world-class Computer Science or Computer Engineering education requires appropriate class sizes, laboratory facilities, faculty, etc.)." *See* Def. Ex. 7.

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

clear that:

> Despite substantial growth in capacity, there continue to be far more applicants who meet all of the admissions criteria than the Allen School can accommodate. Applicants are encouraged to choose a second choice major on campus if there is another field (besides Computer Science or Computer Engineering) that they would consider studying; there is no penalty for selecting a second choice major. Allen School applicants cannot be considered for direct admission twice, so we recommend choosing a major outside of the Allen School as a second choice. There are many other majors at the UW that involve computing![31]

UW also provides three "different admissions pathways to get into the Allen School" to applicants.[32] One of those three paths is "Current UW Student Admission," which allows students enrolled in another major to apply to the Computer Science or Computer Engineering programs. But even then, UW notes that for those who are admitted to UW and listed Computer Science or Computer Engineering as their first choice major, it is often the case that constraints on capacity mean that many students admitted to UW cannot be accommodated in the Allen School.[33] Plaintiffs, however, do not allege that Stanley applied to another major such that he could be admitted to UW even if he was rejected by the Allen School. Plaintiffs do not address any of the underlying facts about the competitiveness of Allen School admissions or the statistics that show that the Allen School regularly rejects a high percentage of extremely qualified applicants.

This is not to suggest that statistical analysis is the only way to plausibly allege discriminatory admissions. In *SFFA* itself, the plaintiffs relied both on statistics, which they asserted demonstrated racial balancing, and on a step-by-step analysis of how and at what points they alleged Harvard improperly considered race in the admissions process. *See* Complaint at ¶¶ 168-199, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, No. 1:14-cv-14176 (D. Mass. Nov. 17, 2014), ECF No. 1 (alleging in detail precisely how and where Harvard injected race into its admissions procedures); *see also id.* ¶¶ 200-51 (providing statistics alleging racial balancing); *SFFA*, 600 U.S. 195, 218, 222 (relying on lower court findings).

---

[31] Def. Ex. 8.
[32] Def. Ex. 7.
[33] Def. Ex. 8.

DEFENDANT'S MOTION TO DISMISS
2:25-cv-00348-JLR

- 19 -

1    While it is not clear that either the *SFFA* plaintiffs' statistical allegations or their detailed

2    allegations about Harvard's admissions process alone would have been sufficient to survive a

3    motion to dismiss, here, Plaintiffs present neither and instead attempt to rely on a single anecdote

4    (Stanley's rejection) and the number of Asian-Americans living in Washington State.

5        Plaintiffs have failed to allege any facts demonstrating that UW unlawfully considers

6    race in its admissions decisions—neither actual policies and procedures of the UW admissions

7    department or the Allen School, nor statistical evidence from which one could infer that race

8    plays a factor in admissions.  Accordingly, Plaintiffs' allegations are simply too conclusory to

9    state a plausible claim for racial discrimination under the Equal Protection Clause and Title VI.

10       **D.**    **Plaintiffs Fail to Plausibly Allege a Violation of RCW 49.60.400.**

11       Plaintiffs' last claim is predicated on an alleged violation of RCW 49.60 *et seq.*, also

12    known as the WLAD.  Compl. ¶ 146.  WLAD was enacted through Initiative 200 in 1998.  It is

13    a state law that prohibits discriminatory practices based on race and other protected

14    characteristics in public accommodations.  Specifically, Plaintiffs claim that UW violated

15    subsection 400, which provides that the State "shall not discriminate against, or grant

16    preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or

17    national origin in the operation of public employment, public education, or public contracting."

18    RCW 49.60.400.  As with Plaintiffs' other claims, Plaintiffs allege no facts to support a violation

19    of WLAD.  At most, Plaintiffs speculate as to why Stanley's application was not accepted by

20    UW's Allen School.  Speculation cannot survive a motion to dismiss, and this Court should

21    dismiss the Plaintiffs' WLAD claim.

22       To establish a prima facie case of discrimination under the WLAD, a plaintiff must show:

23    "(1) the plaintiff is a member of a protected class, (2) the defendant's place of business is a place

24    of public accommodation, (3) the plaintiff was treated differently than similarly situated

25    individuals outside the plaintiff's protected class, and (4) the plaintiff's protected status was a

26    substantial factor in causing the discrimination."  *Steven v. Fed. Way Sch. Dist.*, No. 82042-7-I,

27    2021 WL 5056044, at *2 (Wash. Ct. App. Nov. 1, 2021).  Allegations based on "vague

28    assertions" and "speculation" cannot support a prima facie case of a discrimination claim.  *Id.*

1 at *3.

2    Plaintiffs have not alleged, and cannot establish, a prima facie case of discrimination.[34]

3 Plaintiffs' allegations concerning elements three and four—that Stanley was treated differently

4 than similarly situated individuals outside the plaintiff's protected class, and Stanley's protected

5 status was a substantial factor in causing the discrimination—are based on "vague assertions"

6 and "speculation." *Steven*, 2021 WL 5056044, at *3.  As described above, *supra* IV.B, Plaintiffs

7 make only two relevant allegations: that Stanley was highly qualified, but rejected by the Allen

8 School, and that the percentage of Asian-American students at UW remained constant as the

9 population of Asian-Americans in Washington State increased.  For the same reasons stated

10 above, neither allegation shows that Stanley was "treated differently than similarly situated

11 individuals outside the plaintiff's protected class," or that his race was a "substantial factor" in

12 his rejection from the Allen School.  *Steven*, 2021 WL 5056044, at *2.

### V.  CONCLUSION

14    For these reasons, Defendant Regents of the University of Washington ask the Court to

15 dismiss the Complaint with prejudice.  *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048,

16 1052 (9th Cir. 2003) (explaining that dismissal with prejudice is warranted when amending

17 complaint would be futile).

---

[34] And, as discussed in Section IV(A), *supra*, Plaintiff Nan Zhong cannot make this showing for the additional reason that his other children have not alleged, *inter alia*, that they applied for and were rejected from a program and that a less qualified candidate of a different race was selected instead.

Dated: July 16, 2025

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *s/Robert M. McKenna*

Robert M. McKenna (WSBA No. 18327)
rmckenna@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101-2668
Telephone: +1 206 839 4300
Facsimile: +1 206 839 4301

By: *s/Marc Shapiro*

Marc Shapiro (*Pro Hac Vice*)
mshapiro@orrick.com
51 West 52nd Street
New York, NY 10019-6142
Telephone: +1 212 506 5000

By: *s/Matthew D. LaBrie*

Matthew D. LaBrie (*Pro Hac Vice*)
mlabrie@orrick.com
222 Berkeley Street, Suite 2000
Boston, MA 02116
Telephone: +1 617 880 1802

*Special Assistant Attorneys General
Attorneys for Defendant The Regents of the
University of Washington*

I certify that this memorandum contains 7,572 words, in compliance with the Local Civil Rules.

Dated: July 16, 2025

*s/Robert M. McKenna*
Robert M. McKenna

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF SERVICE

I hereby certify that I caused the foregoing document to be served on all parties registered for e-service in this matter via the Court's e-filing platform, and that, per the parties' agreement, I caused the foregoing document to be sent via email to Stanley Zhong,

Dated: July 16, 2025

        *s/Robert M. McKenna*
        Robert M. McKenna

DEFENDANT'S MOTION TO DISMISS
2:25-cv-00348-JLR
- 23 -
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300