The Honorable James L. Robart

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

STANLEY ZHONG and NAN ZHONG,

Plaintiffs,

v.

THE REGENTS OF THE UNIVERSITY OF WASHINGTON in their official capacities; THE UNIVERSITY OF WASHINGTON; ANA MARI CAUCE, in their personal capacity and their official capacity as the President of the University of Washington; ROBERT J. JONES, in his official capacity as the President of the University of Washington; PAUL SEEGERT, in their personal capacity and their official capacity as the Director of Admissions at the University of Washington; MAGDALENA BALAZINSKA, in their personal capacity and their official capacity as Chair of the Paul G. Allen School of Computer Science & Engineering at the University of Washington, TADAYOSHI KOHNO, in their personal capacity and their official capacity as Associate Director of the Allen School for DEIA (Diversity, Equity, Inclusion & Access); CHLOE DOLESE MANDEVILLE, in their personal capacity and their official capacity as Assistant Director for Diversity & Access; OTHER DOES 10-20 acting in concert with those named above,

Defendants.

Case No. 2:25-cv-00348-JLR

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Noted for April 27, 2026

ORAL ARGUMENT REQUESTED

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
2:25-cv-00348-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND .................................................................................................... 4

    A.    The Allen School Is a Top Computer Science School ..................................... 4

    B.    UW Has a Holistic Admissions Policy ............................................................ 5

    C.    Plaintiff Stanley Zhong, a Non-Washington Resident Applicant, Was
          Denied Admission to the Allen School .......................................................... 6

    D.    Plaintiffs Allege that Stanley Was Denied Admission to the Allen
          School Because of His Race ............................................................................ 7

III.  LEGAL STANDARD ............................................................................................ 9

    A.    Standing and the Rule 12(b)(1) Standard ........................................................ 9

    B.    Rule 12(b)(6) Standard .................................................................................... 9

IV.   ARGUMENT .......................................................................................................... 10

    A.    Plaintiff Nan Zhong Lacks Standing and Should Be Dismissed from
          This Case Under Rule 12(b)(1) ....................................................................... 10

    B.    Plaintiff Minor Son Must Be Dismissed .......................................................... 12

    C.    Plaintiffs Lack Standing to Pursue Their Proposed Injunctive Relief ............. 12

    D.    Counts I, II, and III Should Be Dismissed Because Plaintiffs Do Not
          Plausibly Allege that UW Considers Race in Its Admissions Decisions
          or Discriminates Against Asian-Americans ..................................................... 13

          1.    Plaintiffs do not allege that the University considers race in
                admissions decisions ............................................................................. 14

          2.    Plaintiffs' allegations regarding intent are insufficient ....................... 20

          3.    The Complaint makes numerous irrelevant allegations ........................ 22

    E.    Plaintiffs Fail to Plausibly Allege a Violation of RCW 49.60.400 ................. 22

    F.    Defendants Are Immune from Suit ................................................................... 23

V.    CONCLUSION ....................................................................................................... 24

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT                                    i
2:25-cv-00348-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ...............................................................................................21

*Allen v. Wright*,
468 U.S. 737 (1984) ...............................................................................................11

*Arizonans for Off. English v. Arizona*,
520 U.S. 43 (1997) .................................................................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................9

*Billish v. City of Chicago*,
962 F.2d 1269 (7th Cir. 1992) ...............................................................................18

*Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for the
City of Bos.*,
89 F.4th 46 (1st Cir. 2023) .....................................................................................21

*Carroll v. Nakatani*,
342 F.3d 934 (9th Cir. 2003) ..................................................................................11

*Chinese American Citizens Alliance of Greater New York v. Adams*,
116 F.4th 161 (2d Cir. 2024) ..................................................................................10

*Cholla Ready Mix, Inc. v. Civish*,
382 F.3d 969 (9th Cir. 2004) ..................................................................................23

*City of Richmond v. J.A. Croson Co.*,
488 U.S. 469 (1989) ...............................................................................................18

*Coal. for Econ. Equity v. Wilson*,
122 F.3d 692 (9th Cir. 1997) ..................................................................................18

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.*,
68 F.4th 864 (4th Cir. 2023) ..............................................................................16, 21

*Corales v. Flagstar Bank, FSB*,
822 F. Supp. 2d 1102 (W.D. Wash. 2011) .............................................................10

*Corner Computing Sols. v. Google LLC*,
750 F. Supp. 3d 1208 (W.D. Wash. 2024) ...........................................................9, 10

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
2:25-cv-00348-JLR

ii

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

*Doe v. New York Univ.*,
  No. 23-CV-10515, 2024 WL 2847368 (S.D.N.Y. May 30, 2024) ...................................... 19

*Doe v. Petaluma City Sch. Dist.*,
  54 F.3d 1447 (9th Cir. 1995) .......................................................................................... 23

*Duffy v. Wolle*,
  123 F.3d 1026 (8th Cir. 1997) ........................................................................................ 18

*Essah v. Governing Bd. of L.A. Unified Sch. Dist.*,
  No. EDCV 20-2628, 2023 WL 4304771 (C.D. Cal. Feb. 23, 2023) ................................. 12

*Fisher v. Univ. of Tex. at Austin*,
  579 U.S. 365 (2016) ........................................................................................................ 19

*Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*,
  458 U.S. 375 (1982) ........................................................................................................ 13

*Grady v. Wyatt*,
  No. 20-cv-01631, 2020 WL 6361917 (S.D. Cal. Oct. 29, 2020) ...................................... 20

*Gratz v. Bollinger*,
  539 U.S. 244 (2003) ........................................................................................................ 24

*Grizzell v. San Elijo Elementary Sch.*,
  110 F.4th 1177 (9th Cir. 2024) ................................................................................... 10, 12

*Hall v. Hawaii*,
  791 F.2d 759 (9th Cir. 1986) .......................................................................................... 23

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ........................................................................................................ 23

*Harris v. James*,
  16-cv-05044, 2017 WL 5198196 (W.D. Wash. Sept. 21, 2017) ....................................... 13

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010) .............................................................................................................. 6

*Huey v. Honeywell, Inc.*,
  82 F.3d 327 (9th Cir. 1996) .............................................................................................. 8

*Johns v. County of San Diego*,
  114 F.3d 874 (9th Cir. 1997) ..................................................................................... 10, 12

*King v. County of Los Angeles*,
  No. CV13-04813-SVW (AFM), 2015 WL 13917236
  (C.D. Cal. Dec. 3, 2015) ................................................................................................. 12

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT                                    iii
2:25-cv-00348-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017) ............................................................................................9

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ............................................................................................21

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..........................................................................................................9

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ..........................................................................................9

*McCarthy v. Barrett*,
   804 F. Supp. 2d 1126 (W.D. Wash. 2011) .............................................................13, 14, 20

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ........................................................................................................15

*Mohoney v. Holder*,
   62 F. Supp. 3d 1215 (W.D. Wash. 2014) ........................................................................24

*Moran v. Selig*,
   447 F.3d 748 (9th Cir. 2006) ..........................................................................................15

*NAACP v. Seibels*,
   31 F.3d 1548 (11th Cir. 1994) ........................................................................................18

*Paige v. California*,
   291 F.3d 1141 (9th Cir. 2002) ........................................................................................16

*Quinteros v. InnoGames*,
   No. 22-35333, 2024 WL 132241 (9th Cir. Jan. 8, 2024) ..................................................20

*Raso v. Lago*,
   958 F. Supp. 686 (D. Mass. 1997) .............................................................................18, 24

*Regents of University of California v. Bakke*,
   438 U.S. 265 (1978) ........................................................................................................24

*Rynasko v. N.Y. Univ.*,
   63 F.4th 186 (2d Cir. 2023) ............................................................................................11

*SDI Labs, Inc. v. Sameday Techs., Inc.*,
   No. 23-cv-05619, 2024 WL 989544 (C.D. Cal. Jan. 25, 2024) ........................................15

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ..........................................................................................................9

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
2:25-cv-00348-JLR

iv

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

*Steven v. Fed. Way Sch. Dist.*,
    No. 82042-7-I, 2021 WL 5056044 (Wash. Ct. App. Nov. 1, 2021) ....................................23

*Stewart v. Texas Tech University Health Sciences Center*,
    741 F. Supp. 3d 528 (N.D. Tex. 2024)..................................................................................17

*Stout v. Potter*,
    276 F.3d 1118 (9th Cir. 2002).............................................................................................16

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
    600 U.S. 181 (2023) ...................................................................................................... *passim*

*Students for Fair Admissions, Inc. v. Univ. of N. Carolina*,
    567 F. Supp. 3d 580 (M.D.N.C. 2021)..................................................................................19

*Surface Art, Inc. v. Tesserae Techs., LLC*,
    No. 2:24-CV-00924-TL, 2025 WL 1267433 (W.D. Wash. May 1, 2025)...........................11

*Sussman v. Tanoue*,
    39 F. Supp. 2d 13 (D.D.C. 1999) .........................................................................................18

*Tindall v. Poultney High Sch. Dist.*,
    414 F.3d 281 (2d Cir. 2005)..................................................................................................11

*Turner v. City & County of San Francisco*,
    788 F.3d 1206 (9th Cir. 2015).................................................................................................9

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017).................................................................................................9

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
    429 U.S. 252 (1977) ..............................................................................................................20

*Weiss v. City Univ. of N.Y.*,
    17-CV-3557, 2025 WL 1735429 (S.D.N.Y. June 23, 2025)................................................20

**Constitutional Provisions**

Article III.................................................................................................................................9

Eleventh Amendment.............................................................................................................23

Fourteenth Amendment..................................................................................................9, 13, 21

**Statutes**

42 U.S.C. § 1981 ................................................................................................................9, 13

42 U.S.C. § 2000d .................................................................................................................13

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT                    v
2:25-cv-00348-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

RCW 28B.15.067 ..................................................................................................................4

RCW 49.60.400 .......................................................................................................5, 9, 13, 22

**Rules**

Fed. R. Civ. Proc. 12 ........................................................................................9, 11, 13, 20

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT                          vi
2:25-cv-00348-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

## I.    INTRODUCTION

The University of Washington ("UW" or the "University") is a public institution whose funding comes, in significant part, from appropriations made by the State legislature.  State law requires the University to prioritize the admission of Washington residents.  The impact of this prioritization is more pronounced for UW's most competitive programs and, in particular, the Paul G. Allen School of Computer Science & Engineering (the "Allen School")—the nation's seventh-ranked computer science program—where 84% of students who were admitted as freshmen in 2023 were Washington residents.  While the general admission rate for Washington residents at the University was approximately 50% in 2023, it was approximately 25% for those who applied to the Allen School in 2023.  For non-Washington residents, the admission rate to the Allen School was *less than 2%* in 2023—only 83 non-Washington residents were direct admittees to the Allen School (out of 5,059 applicants).  Stanley Zhong, a California resident, applied for admission to the Allen School for Fall 2023.  He was among the 98% of out-of-state applicants not accepted for admission.

Stanley, along with his father Nan and unnamed minor sibling, bring this litigation claiming the reason Stanley was denied admission to the Allen School is because he is Asian-American and that they fear that his unnamed minor sibling will likewise face discrimination.  As an initial matter, these pro se Plaintiffs lack standing to pursue many of these claims and much of the relief they seek.  Nan lacks standing because he was not discriminated against.  Nan's unnamed minor son's claims must be dismissed because a parent may not assert claims on behalf of a minor without counsel.  And none of these pro se plaintiffs may seek the injunctive relief they request because pro se plaintiffs may not seek injunctive relief on behalf of third parties.  What is left, then, are Stanley's claims for damages against UW, but Defendants are immune from suit for damages.  Regardless, considering Stanley elected to work at Google rather than pursue his degree at similarly ranked schools at which he was accepted, any damages would likely be very small.

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT                    1
2:25-cv-00348-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

Furthermore, the Second Amended Complaint ("SAC") contains no plausible allegations to bear out any of Plaintiffs' claims. Plaintiffs do not identify how or where in UW's admissions procedures race is considered, nor do they even allege that admissions reviewers are aware of an applicant's race. Indeed, the Allen School does not consider race when making admissions decisions: Over 26 years ago, Washington voters approved I-200, a ban on the use of race in university admissions. UW has complied with that ban ever since. Nor does the SAC allege statistics regarding the racial makeup of the Allen School's admitted students that could demonstrate racial balancing. The reality is, coming up with statistics would be very hard for Plaintiffs as *50.2% of applicants admitted to the Allen School in 2023 were Asian-American*.

In place of statistics, Plaintiffs speculate that the University's admissions department has undertaken a decades-long conspiracy to intentionally violate I-200. They claim Stanley's application was so exceptional that his rejection from the Allen School could only be explained by a secret UW admissions process that considers race as a factor, even though Stanley was rejected in 2023 from *sixteen* other schools in addition to the Allen School. They claim that statements from UW administrators disagreeing with the policy behind I-200 and promising to continue to pursue a diverse student body are proof of a conspiracy to violate the law in the Allen School admissions department, rather than proof of a desire to use race-neutral, legal means to ensure UW's student body was diverse in myriad ways. And they load up their SAC with irrelevant allegations about alleged discrimination at other universities, at other UW departments and schools, or in faculty hiring in the UW psychology department.

Unable to allege any fact that shows race was or is a factor in UW or Allen School admissions decisions, Plaintiffs allege that the University's decision during the COVID epidemic to make the SAT optional was a smokescreen for racial balancing in admissions. But such race-neutral policies have never been prohibited, absent evidence that they adversely affect a particular group, which is not the case here (indeed, Plaintiffs cite no evidence whatsoever that Asian-Americans were accepted at a materially lower rate as a result of the decision to make the

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT                    2
2:25-cv-00348-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

SAT optional). And in any event, it makes no sense to allege that the University's frustration with I-200 led it to abandon standardized testing 22 years later during a global pandemic.

Finally, the SAC quotes UW documents—the Broadening Participation in Computing ("BPC") plan, and the Diversity, Equity, Inclusion & Access 5-Year Strategic Plan ("5 Year Plan")—which express goals of increasing the percentage of underrepresented minorities at UW. But Plaintiffs take these quotes out of context. They are not about using race as a factor in admissions; they are about the University's outreach and recruitment efforts to increase the diversity of the *applicant pool*, as opposed to using race to select which applicants to admit. It has long been the law that such efforts are not subject to strict scrutiny and are permissible. Nothing in the Supreme Court's decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College* ("*SFFA*"), 600 U.S. 181 (2023), is to the contrary, as even Justice Thomas in his concurrence in that case recognized.

In *SFFA*, the Supreme Court held that colleges and universities may not consider an applicant's race when deciding whether to admit that applicant. *SFFA* did not make it illegal for administrators to express policy positions affecting higher education. *SFFA* did not make it illegal for university officials to care about the racial, ethnic, economic, or viewpoint diversity among a university's student body. *SFFA* did not make it illegal to measure the demographics of a student body. And *SFFA* did not make it illegal for a university to conduct outreach to various communities to encourage students to apply. The University has never violated state or federal law regarding the use of race in admissions, and none of Plaintiffs' allegations plausibly suggest otherwise.

At bottom, Plaintiffs ask this Court to take college admissions decisions out of the hands of universities and put them in the lap of the judiciary—not only at UW, but nationwide—by allowing any rejected applicant to bring a racial discrimination suit based on little more than the fact that he was rejected from his preferred university and his own *ipse dixit*. Indeed, Plaintiffs specifically ask this Court to act as an appellate court and review the University's decision to reject Stanley.

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT                    3
2:25-cv-00348-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

Plaintiffs have had two opportunities to revise their pleading to properly allege a secret conspiracy to use race in admissions decisions. They cannot do so, in large part because the statistical makeup of the Allen School's student body now and in 2023 contradicts their theory. This Court should put an end to Plaintiffs' crusade of litigating Stanley's rejection from college and dismiss the SAC with prejudice.

## II.   BACKGROUND

### A.   The Allen School Is a Top Computer Science School.

The University of Washington is an internationally renowned institution and is responsible for educating more than 60,000 students each year in its 16 schools and colleges. *See* Def. Exs. 1-3.[1]  Because the University is funded with tax revenue collected from Washingtonians, the State legislature asked the University to prioritize admission of Washington residents. *See* RCW 28B.15.067.  Over 72% of UW's freshmen and transfers in 2023 were Washington residents,[2] and the number was even higher—74%—in 2024.[3]

At issue in this case is a particular school at UW, the "Allen School." SAC ¶51.  Due to its excellence and status as the seventh-best computer science program in the country,[4] the Allen School is "capacity-constrained," meaning that "the number of interested students significantly exceeds the number of students we are able to admit."[5]  In 2023, the year Plaintiff Stanley Zhong applied, 2,155 Washington State residents applied to UW seeking admission to the Allen School as freshmen.[6]  Of those 2,155 applicants, 569 or 26% were accepted.[7]  Also, in 2023, 5,059 non-Washington State residents (like Stanley) applied, and only 83, or 2%, were accepted.[8]  This 13-

---

[1] All citations to "Def. Ex." reference the exhibits attached to the Declaration of Robert McKenna in support of Defendant's Request for Judicial Notice ("RJN").  The Court may consider the contents of the University's website when deciding this motion to dismiss. *See* Defendant's simultaneously filed RJN.
[2] Def. Ex. 4.
[3] Def. Ex. 5.
[4] Def. Ex. 6.
[5] Def. Ex. 7.
[6] Def. Ex. 8.
[7] *Id.*
[8] *Id.*

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

1 ratio of resident to nonresident applicants admitted to the Allen School is consistent with UW's commitment as a state institution to prioritize the admission of Washington residents.[9]

**B.     <u>UW Has a Holistic Admissions Policy</u>**.

Washington law and UW policies have long prohibited consideration of race in public college admissions.  Enacted in 1998 through Initiative 200 ("I-200"), the Washington Law Against Discrimination ("WLAD") prohibits public schools from discriminating against applicants based on race and other protected characteristics.  As Plaintiffs allege, when I-200 went into effect, it had a small but noticeable effect on the racial composition of UW's undergraduate class, with the share of some minorities dropping, and the share of Asian-Americans increasing ten percentage points.  SAC ¶62.

Over the years, UW has developed its holistic admissions policy.  Under this approach, UW considers an applicant's preparation and performance, personal achievements, and characteristics, including:[10]

- Achieving an overall strong level of academic achievement, as demonstrated by grades, and by depth, breadth, and rigor of curriculum;

- Taking advantage of college-preparatory courses during high school, or academic subjects beyond the minimum required for college entrance;

- Taking full advantage of the senior year;

- Demonstrating a positive grade trend;

- Demonstrating a commitment to community service and leadership;

- Exercising significant responsibility in a family, community, employment situation, or through activities;

- Attaining a college-preparatory education despite socioeconomic disadvantage (Washington State residents only); and

- Demonstrating unique perspectives or experiences.[11]

---

[9] *See id.* ("[UW] offers priority in admissions to residents of Washington State.").
[10] Def. Ex. 9.
[11] *Id.*

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT                                        5
2:25-cv-00348-JLR

Every undergraduate applicant receives this holistic review, including applicants to the Allen School.[12]

None of these factors includes consideration of race. Indeed, at UW, "holistic review practices[] may not consider race, color, national origin, or sex as a plus or influencing factor of any kind." Def. Ex. 10. Unsurprisingly then, Plaintiff has not alleged that UW reviewers are even aware of an applicant's race.

### C.    Plaintiff Stanley Zhong, a Non-Washington Resident Applicant, Was Denied Admission to the Allen School.

Stanley is an Asian-American who resides in California. SAC ¶6.[13] Stanley alleges he is a self-taught programmer with numerous impressive achievements. *Id.* ¶¶35-50. According to the SAC, Stanley's high school GPA is 4.42 (weighted). *Id.* ¶37. He reportedly scored 1590 on the SAT and was selected as one of approximately 15,000 National Merit Scholarship finalists. *Id.* ¶¶35-36; *see* Def. Ex. 11. His high school is ranked #14 in California. SAC ¶35. Stanley alleges that before turning 18 years old (but after applying to UW), he received a full-time job offer from Google for a Ph.D.-level position. *Id.* ¶¶46, 49.

Stanley applied to the Allen School for admission in the Fall 2023 term. *Id.* ¶6. His application was rejected.[14] *Id.* ¶53. He alleges, as he must, that he would attend UW if given the opportunity. *Id.* ¶58. His original Complaint in this action alleged that he applied to 18 schools and was rejected from 16 of them. *See, e.g.*, Complaint, ECF No. 1 ("Compl."), Ex. 27, ECF No. 1-5; Def. Ex. 13. However, he did not choose to attend the schools he was admitted to, even though one, the University of Texas, is ranked as highly as the Allen School by U.S. News and World Report in computer science. Compl. Ex. 26, ECF No. 1-4; Def. Exs. 6 & 14.

---

[12] Def. Ex. 8.

[13] For the purposes of this Motion, facts plausibly alleged in the Complaint are assumed to be true. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 5 (2010) ("[W]e accept as true the factual allegations in the City's second amended complaint.").

[14] Stanley listed the Human Centered Design and Engineering in the College of Engineering as a second-choice major on his application. SAC ¶51. Any applicant wishing to enter the College of Engineering must select it as their first-choice major, and so when Stanley was rejected from the Allen School, he was not subsequently considered for the College of Engineering. *See* Def. Ex. 12.

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
2:25-cv-00348-JLR

6

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

Plaintiff Nan Zhong is Stanley's father and, as a basis for his status as a plaintiff in this litigation, claims he suffered financially because he paid Stanley's "nonrefundable application fee," and that he suffered emotional distress because of the alleged discrimination against Stanley. SAC ¶¶7, 172. Plaintiffs also assert claims on behalf of Nan's "Minor Son," who is also Asian-American and who "intends to apply to [UW]," *id.* ¶8, although Plaintiffs later allege that "[UW] has concretely deterred" Minor Son from applying for admission in the future both to "avoid the humiliation of a race-based rejection" and to avoid an alleged "hostile campus climate." *Id.* ¶138.

### D.   Plaintiffs Allege that Stanley Was Denied Admission to the Allen School Because of His Race.

Plaintiffs bring suit alleging that UW engages in discriminatory practices that disadvantage highly qualified Asian-American applicants, including Stanley. They do not allege any direct evidence that UW uses race as a factor when deciding which applicants to admit. And they do not rely on any admissions statistics for Allen School undergraduates that would show that the Allen School engages in racial balancing.

The core premise of the SAC is that Stanley's application was so self-evidently superior that his rejection can be explained only by racial discrimination. *E.g.*, *id.* ¶¶34-59, 126, 142. In other words, by Plaintiffs' own admission, they do not identify any evidence that Stanley experienced racial discrimination. Their theory is simply that there is no other plausible explanation. Plaintiffs allege that they showed his application to various "experts and counselors" who could not "identify a legitimate, performance-based reason why Stanley would have been rejected by a school of UW's caliber," but make no allegation that these experts were made aware of how competitive the Allen School's admissions are or that they saw the applications of the 83 non-residents who were admitted. *Id.* ¶55.

Plaintiffs then allege that UW administrators at times voiced opposition to the policy of I-200. *E.g.*, *id.* ¶¶61-63, 152, 182. They cite similar out-of-context statements from other schools at UW (not the Allen School). *Id.* ¶¶83-90. They also cite a blog post from a professor

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT                    7
2:25-cv-00348-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

of Atmospheric and Climate Science alleging that graduate admissions reviewers in an unnamed department flagged some students with a "DEI flag." *Id.* ¶92. Plaintiffs buttress these allegations by citing UW's 5-Year Plan, *id.* ¶69, the University's "Diversity Blueprint," *id.* ¶¶81-82, the Regent Policy No. 32, *id.* ¶80, and the Allen School's BPC, *id.* ¶75, which discuss increasing the student body's diversity through outreach, recruiting, and retention. *Id.* ¶¶69-71, 75, 80-82.

The only statistics Plaintiffs cite in an effort to prove that UW discriminates against Asian-Americans in admissions are in SAC paragraphs 103 through 105. Plaintiffs allege that, although Washington's Asian-American population increased slightly between 2010 and 2020, "Asian enrollment at the University of Washington has declined," from 28.7% in 2013 to 23% in 2024. *Id.* ¶103-104. They cite numbers from only those two years and exclude from the SAC that Asian-Americans make up over 50% of admitted applicants to the Allen School, an allegation that was present in the First Amended Complaint, ECF No. 23 ("FAC").[15] FAC ¶213; Def. Ex. 15. Finally, the SAC cites national statistics showing that 25% of Asian-American SAT takers score in the top range and then extrapolates those numbers to argue that top-scoring Asian-Americans are underrepresented at UW. SAC ¶105.

Plaintiffs then allege in conclusory fashion that UW's holistic review is a "pretext" for racial balancing. *Id.* ¶¶60, 109, 111-18, 176. The SAC does not allege that Stanley's race—let alone other applicants' races—was known to UW reviewers. Instead, Plaintiffs allege that UW's decision to not require applicants to submit SAT or ACT scores (the "test-optional policy") had the effect of suppressing Asian-American enrollment. *Id.* ¶¶105-09, 115-18. Plaintiffs do not offer any data to support that claim either.

Finally, Plaintiffs allege discrimination at *other* universities. *Id.* ¶¶23-29. They allege discrimination in faculty hiring, ***not admissions***, in UW's psychology department. *Id.* ¶¶97-102. They make allegations regarding graduate admissions, which are not subject to the same

---

[15] *See Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996) ("When a pleading is amended or withdrawn, the superseded portion… remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent.").

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT                                    8
2:25-cv-00348-JLR

policies and procedures as undergraduate admissions. *Id.* ¶¶92-94. And they make generalized allegations about society-wide discrimination against Asian-Americans. *Id.* ¶¶21-22.

Plaintiffs allege violations of the Fourteenth Amendment's Equal Protection Clause (Count I), Title VI of the Civil Rights Act of 1964 (Count II), 42 U.S.C. § 1981 (Count III), and RCW 49.60.400 (Count IV). They seek declaratory and injunctive relief and monetary damages. *Id.* ¶147-186.

### III.   LEGAL STANDARD

#### A.   Standing and the Rule 12(b)(1) Standard.

Article III of the U.S. Constitution "limits federal judicial power to 'Cases' and 'Controversies.'" *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042 (9th Cir. 2017) (quoting U.S. Const. art. III, § 2, cl. 1). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To have standing to sue in federal court, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The injury must be actual or imminent, not hypothetical or speculative. *Lujan*, 504 U.S. at 560. Plaintiffs bear the burden of establishing the elements of standing. *Id.* at 561. Challenges to Article III standing are evaluated under Rule 12(b)(1) for lack of subject matter jurisdiction. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

#### B.   Rule 12(b)(6) Standard.

Under Rule 12(b)(6), a court must dismiss a complaint if the plaintiff fails "to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12. "In reviewing a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true." *Corner Computing Sols. v. Google LLC*, 750 F. Supp. 3d 1208, 1212 (W.D. Wash. 2024). However, the complaint must present a "claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Conclusory legal statements and unwarranted inferences are not enough to prevent dismissal. *See Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
2:25-cv-00348-JLR

9

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

Cir. 2017). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." *See Turner v. City & County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015).

Although a complaint filed by a pro se plaintiff must be "held to less stringent standards" than those used for pleadings drafted by lawyers, even a pro se plaintiff must plead the essential elements of the claim, as the court will "not supply essential elements of [a] claim." *See Corner Computing*, 750 F. Supp. 3d at 1213 (quotation marks omitted). Pro se plaintiffs are still required to allege specific facts to support their assertions. *See Corales v. Flagstar Bank, FSB*, 822 F. Supp. 2d 1102, 1113 (W.D. Wash. 2011).

## IV.   ARGUMENT

### A.   Plaintiff Nan Zhong Lacks Standing and Should Be Dismissed from This Case Under Rule 12(b)(1).

Nan Zhong does not allege any concrete and particularized injury to himself. Rather, he alleges that he suffered "emotional distress, financial loss, and reputational damage" as a result of his son's rejection. SAC ¶¶7, 172. As for the financial injury, Nan alleges that he "paid the non-refundable application fees for Stanley Zhong's application." SAC ¶7. Nan also claims that he "faces the imminent harm of paying for a similarly discriminatory and fraudulent review process" for his Minor Son. *Id.* ¶7. Nan lacks standing for three reasons.

***First***, Nan may not assert claims on behalf of his children pro se. "[C]onstitutional claims are personal and cannot be asserted vicariously. While a non-attorney may appear pro se on his own behalf, he has no authority to appear as an attorney for others than himself," including his own children. *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) (internal quotation marks and citation omitted); *see also Grizzell v. San Elijo Elementary Sch.*, 110 F.4th 1177, 1181 (9th Cir. 2024) ("[A] parent may not proceed pro se on her children's behalf.").

Nan asks the Court to ignore *Johns* and give him special treatment because of his "diligent efforts to retain counsel." SAC ¶140. He also cites a footnote from *Chinese American*

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
2:25-cv-00348-JLR

10

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

*Citizens Alliance of Greater New York v. Adams*, in which the Second Circuit noted that an "equal protection claim can be asserted by… a parent or guardian…." 116 F.4th 161, 173 n.6 (2d Cir. 2024); *see* SAC ¶7. But that conclusion does not mean that a "parent or guardian" can bring such a claim ***without counsel***. Indeed, the same counsel-mandate rule that applies in the Ninth Circuit also applies in the Second Circuit. *See Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284-85 (2d Cir. 2005). Accordingly, Nan cannot bring claims on behalf of Stanley or Minor Son without an attorney.

***Second***, Nan cannot base standing on his voluntary payment of the UW application fee for his son Stanley or any prospective payment of future application fees for Minor Son. SAC ¶7. Courts have refused to confer standing on parents even when they pay the much larger tuition payments for their children. *See, e.g.*, *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 194 n.7 (2d Cir. 2023) ("Federal courts have concluded nearly unanimously that parents of adult students lack standing to bring similar COVID-19-related lawsuits against universities, even when they paid tuition and fees." (collecting cases)). Indeed, Plaintiffs have not even alleged that Nan is in contractual privity with UW, nor could they. *See, e.g.*, *Surface Art, Inc. v. Tesserae Techs., LLC*, No. 2:24-CV-00924-TL, 2025 WL 1267433, at *6 (W.D. Wash. May 1, 2025) (defining privity "narrowly" as "that connection or relationship which exists between two or more contracting parties" (cleaned up)).

***Third***, as for Nan's allegations that he has suffered "emotional distress" and "reputational damage" because of UW's alleged discrimination, that is not a cognizable injury. SAC ¶172. "[N]oneconomic injury… accords a basis for standing only to those persons who are ***personally denied equal treatment*** by the challenged discriminatory conduct." *Allen v. Wright*, 468 U.S. 737, 755 (1984) (emphasis added) (quotation marks omitted); *accord Carroll v. Nakatani*, 342 F.3d 934, 946 (9th Cir. 2003) ("[O]nly those personally denied equal treatment have standing to seek relief.").

Because Nan lacks standing to bring his claims, the Court should dismiss Nan's claims from this case under Rule 12(b)(1).

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT                                11
2:25-cv-00348-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

**B.      Plaintiff Minor Son Must Be Dismissed**.

As explained above, Minor Son's claims cannot be brought by his pro se father. Accordingly, the proper recourse is to dismiss Minor Son's claims without prejudice. *See, e.g.*, *Grizzell*, 110 F.4th at 1181 (affirming district court's dismissal of minor's claims because parent may not proceed pro se on child's behalf).

**C.      Plaintiffs Lack Standing to Pursue Their Proposed Injunctive Relief**.

Plaintiffs seek two forms of injunctive relief: first, a permanent injunction prohibiting the University from, among other things, "considering or using race as a factor in student admissions," "[u]sing 'holistic review' processes,'" "[c]ollecting data on the race or ethnicity of applicants prior to the finalization of admission decisions," and "[p]ursuing or enforcing racial targets." SAC VI, ¶B.  Second, they seek an order directing UW to re-evaluate Stanley's application and prohibiting UW from discriminating against Minor Son. *Id.* ¶C.  The former relief, on its face, would impact all applicants in the future, not just Plaintiffs.  Because Plaintiffs are "proceeding pro se [they do] not have standing to seek injunctive relief on behalf of other persons." *Essah v. Governing Bd. of L.A. Unified Sch. Dist*., No. EDCV 20-2628, 2023 WL 4304771, at *12 n.6 (C.D. Cal. Feb. 23, 2023) (rejecting pro se plaintiff's requested injunction that would benefit "all LAUSD teachers"  (citing *Johns*, 114 F.3d at 876)), *report and recommendation adopted*, No. 2:20-cv-02628-FWS-AGR, 2023 WL 4295835 (C.D. Cal. June 30, 2023); *accord King v. County of Los Angeles*, No. CV13-04813-SVW (AFM), 2015 WL 13917236, at *10 (C.D. Cal. Dec. 3, 2015) (dismissing prayer for injunctive relief as "moot" because pro se plaintiff was seeking relief that would only benefit others).  Even the latter relief—an order directing UW to re-evaluate Stanley's application—would necessarily impact the University's admissions procedures wholesale.  Because the Allen School is capacity constrained, applicants are compared against each other.  Changing how the University reviews one application necessarily changes how it reviews all applications.

Moreover, UW has repeatedly clarified that "holistic review practices[] may not consider race, color, national origin, or sex as a plus or influencing factor of any kind."  Def. Ex. 10.  This

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT                    12
2:25-cv-00348-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

is in accord with I-200, which is already the law. Plaintiffs' requested relief is simply that the University do what it has always done and currently does—follow I-200.

**D.    Counts I, II, and III Should Be Dismissed Because Plaintiffs Do Not Plausibly Allege that UW Considers Race in Its Admissions Decisions or Discriminates Against Asian-Americans.**

Plaintiffs fail to state a plausible claim of discrimination under the Fourteenth Amendment's Equal Protection Clause (Count I), Title VI of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000d (Count II), or 42 U.S.C. § 1981 (Count III). All three counts require the same showing and therefore stand or fall together. *See SFFA*, 600 U.S. at 198 n.2 (noting that the same legal standard governs claims under the Equal Protection Clause and the Civil Rights Act); *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389-90 (1982) (holding that claims under § 1981 are analyzed under the same standard as those under the Equal Protection Clause). Therefore, to state a claim, Plaintiffs must allege "that (1) [Stanley] was treated differently from others similarly situated, and (2) the [University] acted with discriminatory intent." *McCarthy v. Barrett*, 804 F. Supp. 2d 1126, 1143 (W.D. Wash. 2011); *accord Harris v. James*, 16-cv-05044, 2017 WL 5198196, at *3 (W.D. Wash. Sept. 21, 2017) (applying test in 12(b)(6) context).

To be sure, in *SFFA*, the Supreme Court explained that the use of race as a factor in undergraduate admissions satisfies that standard. 600 U.S. at 230-31. But *SFFA* did not herald a change in Washington state law. For nearly 30 years, UW's admissions policies have been subject to I-200, which prohibits the University from considering an applicant's race when making admissions decisions. RCW 49.60.400(1). As the President of the University of Washington explained shortly after the Supreme Court decided *SFFA*, the decision was expected "to have little impact on the UW's admissions practices, given that I-200 already prohibited the use of race as a factor in hiring or admissions by Washington's public universities."[16] Def. Ex. 16.

---

[16] Compl., Ex. 52, ECF No. 1-12.

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
2:25-cv-00348-JLR

13

Plaintiffs posit two theories. First, they allege a secret, decades-long conspiracy by UW admissions officials to violate I-200 and directly consider applicants' race in admissions decisions. But none of the facts alleged in the SAC supports this fanciful theory, such as UW's efforts to increase diversity through race-neutral means, which remain legal even after *SFFA*. Second, Plaintiffs argue that the University acted with discriminatory intent when it adopted race-neutral admissions policies (principally, the test-optional policy), and that those policies have a disparate impact on Asian-American students. But race-neutral policies are not illegal without plausible allegations of disparate impact, which Plaintiffs cannot make, and Plaintiffs' theory of intent makes little sense.

### 1. **Plaintiffs do not allege that the University considers race in admissions decisions**.

Many of the allegations in the SAC (at least those involving UW itself) are directed towards a theory that University administrators **wanted to** use race as a factor in admissions to create a diverse student body. *E.g.*, SAC ¶¶60-67, 145; *see infra* IV.D.2. What is missing from the SAC is a plausible allegation that the University **actually does** consider the race of any applicant as some sort of plus-factor when making admissions decisions, let alone a plausible allegation that UW considered Stanley's race in rejecting him. *See McCarthy*, 804 F. Supp. 2d at 1143 (requiring a plaintiff to demonstrate that he or she was treated differently on account of race). The SAC vaguely alleges a secret conspiracy to violate I-200, but contains no plausible allegations of such a conspiracy and, in fact, never even alleges that admissions officers know or knew any applicant's race, including Stanley's.

*First*, Plaintiff's main allegation on this front is that Stanley's application was so strong that the **only possible reason** for his rejection was his race. *E.g.*, SAC ¶¶34-50, 53, 55-57, 118, 121, 123, 126. This is insufficient. The fact that one applicant from California who is Asian-American was rejected from a program where only 83 nonresident applicants from across the entire country were admitted does not, without more, state a claim for racial discrimination. And references to purported unidentified experts who think Stanley should have been admitted—

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
2:25-cv-00348-JLR

14

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

unaccompanied by allegations that contextualize how these experts were equipped to make such a determination concerning the Allen School's nonresident applicants—are plainly insufficient. *Id.* ¶55. That is especially true here, where Plaintiffs' own materials show UW's decision not to admit Stanley was not anomalous: *Sixteen* of the eighteen programs to which Stanley applied denied him admission, including many that, unlike UW, do not prioritize in-state residents. *See, e.g.*, Compl. Ex. 27; Def. Ex. 13.

Plaintiffs also argue that under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), they have made out a *prima facie* case based solely on Stanley's rejection because, "[o]n information and belief, Defendants admitted non-Asian applicants with academic and technical credentials substantially inferior to Stanley's…." SAC ¶123. While Plaintiffs do not explain the basis of this "information and belief," allegations in their FAC that have been stripped out of the SAC suggest it is based on nothing more than a LinkedIn search. FAC ¶173 (alleging that Plaintiffs searched LinkedIn for admitted UW students and found non-Asian students with backgrounds and experiences "substantially less distinguished" than Stanley's); *see also SDI Labs, Inc. v. Sameday Techs., Inc.*, No. 23-cv-05619, 2024 WL 989544, at *4 (C.D. Cal. Jan. 25, 2024) ("Conclusory allegations upon information and belief, without specific factual allegations, are insufficient to state a claim."). Plaintiffs never identify these individuals, nor explain how their applications made them less qualified than Stanley under UW's holistic admissions process. And Plaintiffs do not allege any *non-resident* applicants to the Allen School with lesser credentials than Stanley were admitted. *See Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) (requiring a plaintiff to show that he or she was similarly situated "in all material respects").

*Second*, Plaintiffs then try to demonstrate a pattern of racial preference in admissions at the Allen School by plucking numbers from two years' worth of demographic statistics for the University's undergraduate admissions *as a whole* (*i.e.*, not just the Allen School). They allege that Asian-Americans made up 28.7% of the freshman class in 2013, and 23% in 2024, while pointing out that the share of the overall population of Washington State that is Asian-American

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
2:25-cv-00348-JLR

15

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

grew from 7.2% in 2010 to 9.5% in 2020.[17]  SAC ¶¶103-04.  But an increase in the Asian-American *population* of Washington state says nothing about the number of competitive Asian-American *applicants* to the Allen School.  Putting aside that Plaintiffs' own numbers show that Asian-Americans are overrepresented at UW, this is not a plausible allegation of anything.  Plaintiffs have seemingly picked demographic information from UW's freshman class at random, showing very small variations between them.  *See Stout v. Potter*, 276 F.3d 1118, 1122 (9th Cir. 2002) (noting "statistical disparities must be sufficiently substantial" to prove discrimination).  Furthermore, Plaintiffs compare the increased Asian-American population to Asian-American admittance to UW generally, not to the admittance rate to the highly competitive Allen School.  *See generally Paige v. California*, 291 F.3d 1141, 1145-47 (9th Cir. 2002) (cautioning courts when looking at statistical evidence of a disparate racial impact to use the correct "comparative group").

In any event, 50.2% of all applicants admitted to the Allen School for fall 2023 were Asian-American.  Def. Ex. 15.  Plaintiffs themselves allege that only 9.5% of Washington residents are Asian-American.  SAC ¶103; *see also*, FAC ¶141.  Thus, far from the University's admissions process discriminating against Asian-American applicants, Asian-Americans are extremely well represented in the Allen School.  *See Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 881 (4th Cir. 2023) (rejecting similar claim in light of evidence that Asian-Americans were overrepresented at the school).  Other statistical evidence in the SAC undermines Plaintiffs' theory:  Plaintiffs allege that the share of Asian-Americans went up after I-200 was passed, SAC ¶62, showing that the University *complied* with that directive.

Finally, Plaintiffs point to an alleged disparity between the high number of Asian-American top scorers on the SAT and the number of Asian-American students at UW.  *Id.* ¶¶105, 142.  Putting aside that this allegation relies on UW-wide demographics instead of the Allen School's demographics (where 50.2% of admitted applicants in 2023 were Asian-American),

---

[17] Paragraph 103 of the SAC alleges that the Asian population of Washington state "grew by 51.9% in those years."  That equates to an increase from 7.2% to 9.5%.  *See* FAC ¶141 (including the 7.2% and 9.5% figures that were stripped out of the SAC).

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
2:25-cv-00348-JLR

16

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

this argument assumes that SAT scores should be the sole metric by which applicants are judged, which is not how UW has structured its holistic review process.

The lack of objective data supporting Plaintiffs' claims is apparent when their allegations are compared to those in a recent, post-*SFFA* case. In *Stewart v. Texas Tech University Health Sciences Center*, the plaintiff's allegations survived a motion to dismiss because plaintiff identified "records [that] show[ed] 'the median and mean grade-point averages and MCAT scores of admitted black and Hispanic students [were] significantly lower than the grade-point averages and MCAT scores of admitted white and Asian students.'" 741 F. Supp. 3d 528, 537 (N.D. Tex. 2024). Plaintiffs here offer nothing even approximating the statistical analysis that plausibly alleged discriminatory admissions in *Stewart*.

***Third***, Plaintiffs ask the Court to infer that race is a factor in admissions decisions based on out-of-context quotations from the 5 Year Plan, Diversity Blueprint, and BPC, which set goals of having a certain percentage of the student body be from underrepresented minority populations. SAC ¶¶69-75. The entire 5 Year Plan, Diversity Blueprint, and BPC are attached as Exhibits 17-19 to Defendants' RJN, respectively. They demonstrate that nothing about these goals, nor the measures intended to achieve them, suggests that race is used as a factor ***in admissions decisions***. The 5 Year Plan lists the "Tactics" that should be used to accomplish the goal, which are all various forms of outreach and recruitment to different populations in Washington State. Def. Ex. 17 at 27. The Overview section of the 5 Year Plan lists "six imperatives" to "implement[] our strategy," none of which involves using race as a criterion for admission. *Id.* at 6-7. Instead, the only admissions-related imperative is "Outreach" to "build effective pipelines": a recruitment effort. *Id.* at 7. Similarly, as even Plaintiffs acknowledge, the BPC outlines a series of "recruitment and outreach initiatives." SAC ¶75; Def. Ex. 19. The same is true of the UW-wide Diversity Blueprint, which states plainly that it is focused on "recruitment and outreach," and "strengthen[ing] undergraduate retention."[18] Def. Ex. 18; SAC ¶81.

---

[18] Plaintiffs' allegations regarding supposed concealment of these documents is belied by the fact that Plaintiffs cited them in their SAC and provided a hyperlink to the Diversity Blueprint.

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
2:25-cv-00348-JLR

17

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

Encouraging diverse populations to apply for admission is not the same as considering race in admissions decisions.  It has long been the case that "affirmative marketing, outreach, and recruitment programs directed at minorities have been characterized as 'race neutral' and have not been subject to strict scrutiny analysis." *Raso v. Lago*, 958 F. Supp. 686, 702 (D. Mass. 1997) (collecting cases), *aff'd*, 135 F.3d 11 (1st Cir. 1998); *accord Duffy v. Wolle*, 123 F.3d 1026, 1038-39 (8th Cir. 1997) ("An employer's affirmative efforts to recruit minority and female applicants does not constitute discrimination."); *NAACP v. Seibels*, 31 F.3d 1548, 1571 (11th Cir. 1994) (describing efforts to encourage minorities to apply for jobs as "race-neutral"); *Billish v. City of Chicago*, 962 F.2d 1269, 1290 (7th Cir. 1992) (same), *rev'd on other grounds*, 989 F.2d 890 (7th Cir. 1993) (en banc); *Sussman v. Tanoue*, 39 F. Supp. 2d 13, 25-26 (D.D.C. 1999) ("Courts have consistently declined to apply strict scrutiny to outreach efforts to minorities which do not accompany actual preferences.").  Thus, when the 9th Circuit was asked to pass on the constitutionality of a California law similar to I-200, it held that the district court correctly interpreted that law to prohibit only "programs that grant preferential treatment to individuals on the basis of their race or gender" and not outreach and recruiting efforts. *Coal. for Econ. Equity v. Wilson*, 122 F.3d 692, 700 (9th Cir. 1997).

The Supreme Court has also stated that not all efforts to increase diversity are illegal— only racial preferences in admissions decisions.  For instance, in his concurrence in *SFFA*, Justice Thomas noted with approval that "universities prohibited from engaging in racial discrimination by state law continue to enroll racially diverse classes by race-neutral means." *SFFA*, 600 U.S. at 284 (Thomas, J., concurring); *see also id.* at 299-300 (Gorsuch, J., with Thomas, J. concurring) (noting that universities "could obtain significant racial diversity without resorting to race-based admissions practices" such as preferencing "socioeconomically disadvantaged applicants" and ending preference for "children of donors, alumni, and faculty"); *id.* at 317 (Kavanaugh, J., concurring) ("[Universities] 'can, of course, act to undo the effects of past discrimination in many permissible ways that do not involve classification by race.'" (quoting *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 526 (1989))).  Even the *SFFA*

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
2:25-cv-00348-JLR

18

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

plaintiffs argued in the district court that there were "***race neutral*** alternatives available to UNC that include (1) investing in programs that would bring in more highly qualified, socioeconomically disadvantaged minorities into its applicant pool." *Students for Fair Admissions, Inc. v. Univ. of N. Carolina*, 567 F. Supp. 3d 580, 664 (M.D.N.C. 2021) (emphasis added) (quotation marks omitted), *rev'd sub nom SFFA*, 600 U.S. 181; *see also Fisher v. Univ. of Tex. at Austin*, 579 U.S. 365, 385 (2016) ("For example, petitioner suggests that the University could intensify its outreach efforts to African–American and Hispanic applicants.").

***Fourth***, and finally, Plaintiffs complain about UW's holistic admissions policy, along with the COVID-era test-optional policy. SAC ¶¶106-07, 111-18. They claim that making the SAT optional "allows the University to reject high-achieving Asian-American applicants without creating a statistical paper trail of 'high-score rejections.'" *Id.* ¶116. These allegations are nothing more than Plaintiffs' speculation. As noted above, Plaintiffs have not plausibly alleged that UW uses race as a factor for admissions or that reviewers even know the race of applicants when evaluating applications. (Indeed, they could not so allege, as reviewers do not know the self-reported race of any applicant.) The University's holistic review process does not "lack[] transparency," *id.* ¶68; it is a multi-factor process that takes a wide view of an applicant's qualifications; and it is explained fully on UW's website, Def. Ex. 9; *see also supra* II.B.

The SAC alleges that statements from UW administrators opposing I-200 on policy grounds demonstrate a secret conspiracy to consider race in admissions through the holistic review. *E.g.*, SAC ¶¶60-67, 145. None of these statements indicates a willingness or desire to violate I-200 (much less an actual violation of I-200). To the contrary, a 2018 letter cited in the SAC expressed the opinion that UW was ***not*** considering race in admissions (and that ***not*** considering race was harming UW's competitiveness). *Id.* ¶63.

\* \* \*

Plaintiffs do not adequately allege that the University uses race as a factor in admissions. *See Doe v. New York Univ.*, No. 23-CV-10515, 2024 WL 2847368, at \*6-7 (S.D.N.Y. May 30, 2024) ("It was incumbent upon Doe to include facts supporting his allegation that NYU is giving

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT                    19
2:25-cv-00348-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

and intends to give preferential treatment to certain minority groups."); *see also Weiss v. City Univ. of N.Y.*, 17-CV-3557, 2025 WL 1735429, at *7 (S.D.N.Y. June 23, 2025) (granting university summary judgment because Plaintiff could not point to evidence that "in 'rating' applicants, 'readers can and do take an applicant's race into account'" (quoting *SFFA*, 600 U.S. at 194-95)); *cf. SFFA*, 600 U.S. at 218, 222 (relying on lower court findings regarding universities' race-based admissions criteria and statistics showing racial balancing).

### 2. <u>Plaintiffs' allegations regarding intent are insufficient</u>.

Much of the rest of the SAC contains allegations that UW administrators expressed opinions about I-200's public policy over the two decades preceding Stanley's rejection. *E.g.*, SAC ¶¶60-67, 145. Plaintiffs claim this is relevant to prove the required intent as required by *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977). SAC ¶152. As an initial matter, none of these allegations is sufficient to prove Plaintiff's theory of a secret conspiracy to consider race in admissions decisions. *See McCarthy*, 804 F. Supp. 2d at 1143 (requiring proof "that (1) [the plaintiff] was treated differently from others similarly situated"); *see also Grady v. Wyatt*, No. 20-cv-01631, 2020 WL 6361917, at *4 (S.D. Cal. Oct. 29, 2020) ("Plaintiff does not allege any non-conclusory facts suggesting that Defendants acted in a discriminatory manner or that Plaintiff was treated differently from any other inmate….").

To the extent Plaintiffs are positing a theory that the facially neutral policy of being "test-optional" was motivated by discriminatory animus, SAC ¶¶151, 152, that theory fails. First, these two conclusory paragraphs in which the test-optional policy is only passingly mentioned are insufficient under the Rule 12(b)(6) standard to plausibly state such a claim. Plaintiffs' speculation that the test-optional policy was enacted to allow the University to secretly use race as a plus-factor in admissions without "creating a statistical paper trail," *id.* ¶116, is wholly unsupported and certainly not plausibly alleged. *See Quinteros v. InnoGames*, No. 22-35333, 2024 WL 132241, at *1 (9th Cir. Jan. 8, 2024) ("Factual allegations… must be plausible, and not merely speculative.").

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
2:25-cv-00348-JLR

20

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

Even if the SAC's allegation on this front were sufficiently specific, it is well established that a "facially neutral" policy only violates the Equal Protection Clause if (1) it has a "disproportionate impact on an identifiable group" *and* (2) there is proof that "some invidious or discriminatory purpose underlies the policy." *Lee v. City of Los Angeles*, 250 F.3d 668, 686-87 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002); *Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001) (holding that private suits alleging disparate impact under Title VI must show intent). *SFFA*, which itself was concerned with admissions policies that expressly considered race as a factor and therefore were not "facially neutral," did not change this law. *See Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for the City of Bos.*, 89 F.4th 46, 58-60 (1st Cir. 2023) (distinguishing *SFFA* from cases involving facially neutral admissions policies and requiring proof of disparate impact).

Plaintiffs have not plausibly alleged that the test-optional policy has a "disproportionate impact on" Asian-Americans. *Lee*, 250 F.3d at 686-87. They point to no evidence that Asian-American enrollment declined as a result of this policy, they never allege what percentage of applicants do and do not submit test scores, and they wholly ignore the fact that *more than half of all applicants admitted to the Allen School in 2023 were Asian-American*.

Moreover, Plaintiffs have not plausibly alleged that the adoption of the test-optional policy "is traceable to an 'invidious' discriminatory intent." *Coal. for TJ*, 68 F.4th at 879. Indeed, Plaintiffs offer nothing but the conclusory assertion that the policy was adopted to adversely impact Asian-American applicants. Yet, Plaintiffs admit the policy was borne out of the 2021 COVID-19 epidemic, not a response to the 1998 I-200. SAC ¶115.

Finally, even if the adoption (or continuation) of the test-optional policy was intended to increase racial diversity at UW, it is precisely the sort of race-neutral policy that members of the *SFFA* majority explicitly stated would be permissible to increase diversity. *See supra* IV.D.1 (citing concurrences in *SFFA* from Justices Thomas, Gorsuch, and Kavanaugh).

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT                21
2:25-cv-00348-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

**3.      The Second Amended Complaint makes numerous irrelevant allegations**.

Finally, the SAC asserts numerous irrelevant allegations.  First, it alleges discrimination against Asian-Americans by *other* universities, with a particular focus on the University of California.  SAC ¶¶23-29.  Second, it alleges discrimination by UW faculty (not the Office of Admissions) in hiring a faculty member in a different college and different department (psychology, not computer science).  *Id.* ¶¶95-102.  Third, it highlights a rubric for transfer admissions.  *Id.* ¶78.  None is relevant to the claims here.

This case is about the University of Washington.  Other institutions' approaches to admissions are irrelevant.  Equally irrelevant is employment decision-making at the University of Washington.  That is particularly so where the University took swift corrective action once the facts came to light regarding a faculty hiring decision in the Department of Psychology.  FAC ¶126.  As for Plaintiffs' reliance on a professor's blog post regarding *graduate admissions*, SAC ¶92, that has nothing to do with the undergraduate admissions process at issue here, and that professor is unaffiliated with (and apparently professes no knowledge of) the Allen School or its admission process.  Plaintiffs' allegation regarding the Transfer Admissions Rubric, *id.* ¶78, is irrelevant because it does not involve the admissions process applied to Stanley's application.  And the litany of other departments within UW that issued statements on student diversity, *id.* ¶¶79-90, are irrelevant to this case about the Allen School.  Nor do those statements plausibly allege racial discrimination practices; rather, they are consistent with UW's recruiting, outreach, and retention efforts and do not suggest a secret conspiracy to violate I-200.  *See supra* IV.D.1.

**E.      Plaintiffs Fail to Plausibly Allege a Violation of RCW 49.60.400**.

Plaintiffs' last claim—an alleged violation of WLAD, RCW 49.60 *et seq.*—likewise fails.  SAC ¶180.  WLAD was enacted through I-200 in 1998.  To establish a *prima facie* case of discrimination under WLAD, a plaintiff must show: "(1) the plaintiff is a member of a protected class, (2) the defendant's place of business is a place of public accommodation, (3)

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT                                    22
2:25-cv-00348-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

the plaintiff was treated differently than similarly situated individuals outside the plaintiff's protected class, and (4) the plaintiff's protected status was a substantial factor in causing the discrimination." *Steven v. Fed. Way Sch. Dist.*, No. 82042-7-I, 2021 WL 5056044, at \*2 (Wash. Ct. App. Nov. 1, 2021).  Allegations based on "vague assertions" and "speculation" cannot support a prima facie case of a discrimination claim. *Id.* at \*3.

For the same reasons stated above, *supra* IV.D, Plaintiffs have not adequately alleged that Stanley was "treated differently than similarly situated individuals outside the plaintiff's protected class" or that his race was a "substantial factor" in his rejection from the Allen School. *Steven*, 2021 WL 5056044, at \*2.

**F.    Defendants Are Immune from Suit**.

Sovereign immunity bars Plaintiffs' federal claims for damages against the University and the individual Defendants in their official capacities. *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983."); *Hall v. Hawaii*, 791 F.2d 759, 761 (9th Cir. 1986) (finding University of Hawaii and its board of regents "clearly immune as agencies of the state").  And the Eleventh Amendment bars Plaintiffs' state-law claims (both for damages and for prospective relief) against the University and the individual Defendants in their official capacities. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (holding that the Eleventh Amendment "precludes the adjudication of pendent state law claims against nonconsenting state defendants in federal courts").

Plaintiffs' claims for damages against the individual Defendants in their individual capacities are barred by the doctrine of qualified immunity, which protects individuals "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Plaintiffs' claims are based on a change in law heralded by *SFFA*, which was decided in 2023 **after** Stanley was rejected and **after** all the conduct alleged in the

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT                                        23
2:25-cv-00348-JLR

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

SAC took place. *See Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1451 (9th Cir. 1995) (noting that right of action was not clearly established until Supreme Court decision).

Contrary to Plaintiffs' argument in SAC paragraph 157, setting diversity goals to be accomplished through recruiting, outreach, and retention has never amounted to an impermissible "quota" under *Regents of University of California v. Bakke*, 438 U.S. 265 (1978), or *Gratz v. Bollinger*, 539 U.S. 244 (2003). *See supra* IV.D.1; *Raso*, 958 F. Supp. at 702 (collecting cases). Plaintiffs also point to a quote from an email about the hiring issue at the Psychology Department to "delete the statement," which is clearly irrelevant to his claim regarding undergraduate admissions. SAC ¶157. And the fact that the 5 Year Plan no longer appears on the website, *id.*, after Plaintiffs have weaponized out-of-context quotes for this lawsuit, says nothing about the state of mind of the individual Defendants when Stanley applied several years ago.

## V.    CONCLUSION

For these reasons, Defendants ask the Court to dismiss the Complaint with prejudice. *See Mohoney v. Holder*, 62 F. Supp. 3d 1215, 1225 (W.D. Wash. 2014) ("Because the Complaint has already been amended once and further amendment would be futile, the dismissal is with prejudice.").

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
2:25-cv-00348-JLR

24

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington 98101-2668
+1 206 839 4300

Dated: March 30, 2026

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *s/Robert M. McKenna*
Robert M. McKenna (WSBA No. 18327)
rmckenna@orrick.com
401 Union Street, Suite 3300
Seattle, WA  98101-2668
Telephone:  +1 206 839 4300
Facsimile:  +1 206 839 4301

By: *s/Marc Shapiro*
Marc Shapiro (*pro hac vice*)
mrshapiro@orrick.com
51 West 52nd Street
New York, NY 10019-6142
Telephone:  +1 212 506 5000

By: *s/Matthew D. LaBrie*
Matthew D. LaBrie (*pro hac vice*)
mlabrie@orrick.com
222 Berkeley Street, Suite 2000
Boston, MA 02116
Telephone:  +1 617 880 1802

*Special Assistant Attorneys General*
*Attorneys and counsel for Defendants*

I certify that this memorandum contains 8,366 words, in compliance with the Local Civil Rules.

Dated: March 30, 2026

*s/Robert M. McKenna*
Robert M. McKenna

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
2:25-cv-00348-JLR

25

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300

**DECLARATION OF SERVICE**

I hereby certify that I caused the foregoing document to be served on all parties registered for e-service in this matter via the Court's e-filing platform, and that, per the parties' agreement, I caused the foregoing document to be sent via email to Stanley Zhong,

Dated:  March 30, 2026

_s/Robert M. McKenna_ _____
Robert M. McKenna

DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT
2:25-cv-00348-JLR

26

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, Washington  98101-2668
+1 206 839 4300