UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STANLEY ZHONG, et al., | CASE NO. C25-0348JLR |
| Plaintiffs, | ORDER |
| v. | |
| THE UNIVERSITY OF WASHINGTON BOARD OF REGENTS, et al., | |
| Defendants. | |

ORDER - 1

## I.  INTRODUCTION

Before the court are Defendants'[1] motion to dismiss *pro se* Plaintiffs Stanley Zhong and Nan Zhong's[2] second amended complaint and request for judicial notice. (MTD (Dkt. # 43); Request (Dkt. # 44); Reply (Dkt. # 48); *see also* 2d Am. Compl. (Dkt. # 39).)  Plaintiffs oppose the motion and Defendants' request for judicial notice. (Resp. (Dkt. # 46).)  The court has considered the parties' submissions, the relevant portions of the record, and the governing law. Being fully advised,[3] the court GRANTS in part and DENIES in part Defendants' motion.

## II.  BACKGROUND

This civil rights action arises from the University's rejection of Stanley's application to enroll in its undergraduate computer science program in Fall 2023.  (2d Am. Compl. ¶¶ 1, 6.)  Plaintiffs assert that "Defendants have engaged in systemic racial discrimination against Asian American applicants" by requiring them "to meet higher standards of academic and extracurricular achievement than applicants of other races."

---

[1] Defendants are the University of Washington (the "University"); Ana Mari Cauce, former President of the University; Robert J. Jones, current President of the University; Paul Seegert, Director of Admissions at the University; Magdalena Balazinska, Chair of the Paul G. Allen School of Computer Science & Engineering; Tadayoshi Kohno, Associate Director of the Allen School for Diversity, Equity, Inclusion & Access; and Chloe Dolese Mandeville, Assistant Director for Diversity & Access ("UW Officials" and together with the University, "Defendants").

[2] Nan Zhong asserts that he brings this case individually and on behalf of his minor son ("Minor Son"). (*See* 2d Am. Compl. at 1.)  To avoid confusion, the court refers to Stanley Zhong and Nan Zhong by their first names in this order.  By doing so, the court means no disrespect.

[3] Plaintiffs did not request oral orgument; Defendants initially requested oral argument but withdrew that request in their reply. (*See* Resp. at 1; Reply at 12 n.8.)  The court concludes that oral argument is not necessary to decide the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER - 2

(*Id.* ¶¶ 1, 3, 6.)  Plaintiffs allege violations of the Fourteenth Amendment's Equal Protection Clause, 42 U.S.C. § 1983; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*; 42 U.S.C. § 1981; and the Washington Law Against Discrimination, RCW 49.60.400 ("WLAD").  (*See id.* ¶¶ 147-86.)

**A.      Admission to the University's Paul G. Allen School of Computer Science & Engineering**

According to Plaintiffs, the University historically "openly defended and advocated for race-conscious admissions policies[.]"  (*Id.* ¶ 60.)  In 1998, Initiative 200 ("I-200") became law in Washington state and prohibited race-based preferential treatment in public education.  (*Id.* ¶ 61; *see* RCW 49.60.400(1).)  In the subsequent admissions cycle, "[o]ffers to Black, Native American, and Hispanic applicants declined, while offers to Asian American applicants increased by 10%."  (2d Am. Compl. ¶ 62 (citing a May 17, 1999 UW News report).)

The University advertises that it uses a "holistic" admissions process to select students for undergraduate admissions.  (*Id.* ¶ 68; McKenna Decl. (Dkt. # 45) ¶ 10, Ex. 9 (Holistic Review Admissions Webpage)[4].)  In 2021, the University's Paul G. Allen School of Computer Science & Engineering (the "Allen School") published a strategic five-year plan addressing diversity, equity, inclusion, and access (the "DEIA Plan") which, according to Plaintiffs, explicitly established race-based enrollment targets.  (2d

---

[4] The court grants Defendants' request to incorporate the Holistic Review Admissions Webpage by reference.  *See Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1162 (9th Cir. 2019); Fed. R. Evid. 201(b).

ORDER - 3

Am. Compl. ¶ 69 (citing the DEIA Plan); *see* McKenna Decl. ¶ 18, Ex. 17 (DEIA Plan).[5]) The DEIA Plan directed the University to "[m]easure the percentage of domestic Black, Hispanic, and American Indian/Alaska Native, Hawaiian/Pacific Islander undergraduates and, by year 5, evaluate whether the percentage is at least 15% (the UW-Seattle average)." (DEIA Plan at 153.) The DEIA Plan also noted that "[t]he above targets are our current 5-year targets" not "final targets."[6] (*Id*. at 154.)

From December 15, 2021, to December 15, 2023, the Allen School also incorporated a Departmental Broadening Participation in Computing ("BPC") Plan which, according to Plaintiffs, established "specific numerical targets for racial enrollment" (*Id*. ¶ 75), such as "increas[ing] the percentage of domestic [Black, Hispanic, Native ("BHN")] undergraduates to the UW-Seattle average" (*see* McKenna Decl. ¶ 20, Ex. 19 (BPC Plan)).[7] Plaintiffs allege that in order to achieve these targets, the BPC Plan "authorized recruitment and outreach initiatives specifically focused on the 'BHN' demographic, including targeted K-12 outreach, summer camps, and partnerships with identity-based organizations." (2d Am. Compl. ¶ 75.)

//

//

//

---

[5] The court grants Defendants' request to incorporate the DEIA Plan by reference. *See Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1162 (9th Cir. 2019); Fed. R. Evid. 201(b).

[6] The University's website no longer displayed the DEIA Plan as of August 5, 2025. (2d Am. Compl. ¶ 77.)

[7] The court grants Defendants' request to incorporate the BPC Plan by reference. *See Steinle*, 919 F.3d at 1162; Fed. R. Evid. 201(b).

ORDER - 4

**B.      Stanley Zhong's Credentials and Application to the University**

Plaintiffs represent that Stanley is a resident of California and a highly qualified applicant for undergraduate admission.  (*Id*. ¶¶ 6, 34.)  Specifically, Plaintiffs allege that Stanley was among the top students academically at his high school, scored well on standardized college admissions exams, and "took on leadership roles in a variety of academic and volunteer organizations."  (*Id*. ¶¶ 35-38.)  Stanley is a "self-taught programmer" who earned "top honors in some of the world's most competitive coding contests[.]"  (*Id*. ¶¶ 40-41 (listing the competitions); *see also id*. ¶¶ 43-44 (describing notable coding initatives).)  When Stanley was 13 years old, Google offered him a full-time software engineer interview before learning that he was ineligible for employment based on his age.  (*Id*. ¶ 42.)  Just before his 18th birthday, Stanley successfully re-applied for a software engineering position at Google.  (*Id*. ¶¶ 46-49.)  When Plaintiffs filed suit, Stanley worked for Google as a software engineer.  (*See id*. ¶ 50 (describing the outcome of his January 2025 full-year job performance evaluation).)

Stanley applied to the University for enrollment in the Fall 2023 term.  (*Id*. ¶ 51.)  His first-choice major was computer science in the Allen School, and his second-choice major was human centered design and engineering in the College of Engineering.  (*Id*.)  The University denied Stanley's application for admission.  (*Id*. ¶ 53.)  Stanley asserts that there is no merit-based reason why the University would reject his application and that, due to the University's "discriminatory admissions policies and practices[,]" he was "denied the opportunity to compete for admission to [the University] on equal footing with other applicants on the basis of race or ethnicity[.]"  (*Id*. ¶¶ 55-57.)  Stanley

represents that (1) he is "ready and able to apply to [the University] when it ceases its intentional discrimination against Asian Americans" and (2) as a result of the University's conduct, he has suffered significant harm, including "loss of educational opportunities, reputational damage, and emotional distress."  (*Id*. ¶¶ 58-59.)

Nan is Stanley and Minor Son's father.  (*Id.* ¶ 7.)  He appears in this case both in his individual capacity and "as the representative and next friend of his Minor Son" who intends to apply to the University for the Fall 2027 term and who, according to Plaintiffs, "faces a credible and imminent threat of being subjected to the same discriminatory admissions policies that rejected his brother."  (*Id*. ¶ 8.)

**C.    Procedural History**

On February 21, 2025, Plaintiffs initiated this action in this court alleging that the University engaged in "racially discriminatory admissions practices" that disadvantaged Stanley and other "highly qualified Asian-American applicants[.]"  (Compl. (Dkt. # 1) ¶¶ 1, 6.)  On August 6, 2025, Plaintiffs filed their first amended complaint.  (*See generally* Am. Compl. (Dkt. # 23).)  On February 17, 2026, Plaintiffs filed the operative second amended complaint with the court's leave.  (*See generally* 2d Am. Compl.; *see also* 2/17/26 Order (Dkt. # 38).)  Plaintiffs raise the following claims:  (1) violation of the Equal Protection Clause of the Fourteenth Amendment against the UW Officials in their official and individual capacities; (2) violation of Title VI of the Civil Rights Act of 1964 against the University and its Regents; (3) violation of 42 U.S.C. § 1981 against all Defendants; and (4) violation of the Washington Law Against Discrimination ("WLAD") against all Defendants.  (2d Am. Compl. ¶¶ 147-86.)

On March 30, 2026, Defendants filed the instant motion to dismiss and request for judicial notice.  (*See generally* MTD; Request.)  The motion and request are now fully briefed and ripe for decision.

### III.    ANALYSIS

The court first addresses Defendants' motion to dismiss based on lack of jurisdiction before turning to their motion to dismiss for failure to state a claim.

**A.    Motion to Dismiss for Lack of Jurisdiction**

Defendants urge the court to dismiss Plaintiffs' second amended complaint because:  (1) Nan lacks standing to pursue his claims in this matter; (2) Nan cannot pursue Minor Son's claims *pro se*; (3) Plaintiffs lack standing to pursue their proposed injunctive relief; and (4) Plaintiffs' claims for damages are barred by sovereign immunity.  (*See generally* MTD.)  The court addresses each argument in turn.

1.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The case or controversy requirement under Article III of the U.S. Constitution "limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing and that claims be ripe for adjudication."  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010) (internal quotation marks and citation omitted).  "Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication."  *Id*. at 1122 (citation omitted).  The Supreme Court has made clear that "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of

ORDER - 7

relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (citation omitted). Article III standing is a "threshold question in every federal case, determining the power of the court to entertain the suit[,]" *Warth v. Seldin*, 422 U.S. 490, 498 (1975), and standing requirements "can neither be waived by the parties nor ignored by the court[,]" *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 932 n.17 (9th Cir. 2011). To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted).

> 2.    Nan Lacks Article III Standing.

Defendants assert that Nan lacks standing and should be dismissed from this case pursuant to Rule 12(b)(1) because he cannot show that he has suffered a cognizable injury. (MTD at 10-11.) Plaintiffs counter that Nan suffered a cognizable injury because he "personally paid application fees in connection with the challenged admissions process and thus suffered a direct economic injury traceable to that process." (Resp. at 19; *see* 2d Am. Compl. ¶ 7.)

The court concludes that Nan lacks standing to pursue his claims in this action. Standing to pursue discrimination claims extends to "only those who are personally denied equal treatment" by the challenged discriminatory conduct." *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1185 (9th Cir. 2012) (citing *Allen v. Wright*, 468 U.S. 737, 738, 755 (1984) (internal quotation marks omitted). Here, Nan has not

ORDER - 8

alleged any claims arising from the violation of his own rights; instead, he alleges only indirect effects of the alleged violation of Stanley's rights.  (*See* Resp. at 19; *see also* 2d Am. Compl. ¶ 7.)  Therefore, the court dismisses Nan's claims for lack of Article III standing.

Under Federal Rule of Civil Procedure 15(a), district courts are to "freely give" leave to amend a claim subject to dismissal.  Fed. R. Civ. P. 15(a)(2).  In determining whether to grant leave to amend, district courts consider factors "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment[.]"  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Here, the court denies leave to amend because Nan can allege no additional facts consistent with the complaint to cure this deficiency.

3.   The Court Dismisses Minor Son from this Action.

Defendants contend that the court should dismiss Minor Son's claims without prejudice because binding precedent forecloses Nan from pursuing Minor Son's claims *pro se*.  (MTD at 12.)  Although a "non-attorney may appear *pro se* on his own behalf, '[h]e has no authority to appear as an attorney for others than himself.'"  *Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) (citation omitted) (emphasis added).  Rather, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child."  *Id*. at 876 (quoting *Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pennsylvania*, 937 F.2d 876, 881–82 (3d Cir. 1991)); *see also Grizzell v. San Elijo*

*Elementary Sch.*, 110 F.4th 1177, 1180-81 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2701 (2025) (reaffirming *Johns*'s holding "that a parent may not proceed *pro se* on her children's behalf") (emphasis in original).  Thus, the court dismisses Minor Son's claims without prejudice to renewing his claims if he obtains counsel in the future.  The court denies leave to amend Minor Son's claims as futile.  *See Eminence Cap., LLC*, 316 F.3d at 1051-52.

> 4.   The Court Denies the Requests for Injunctive Relief Except as to Stanley's Own Injury.

Plaintiffs request two forms of injunctive relief.  First, they seek:

> B. Permanent Injunction:  An order permanently enjoining Defendants, their officers, agents, associates, employees, and all persons in active concert or participation with them from:  1. Considering or using race as a factor in student admissions; 2. Using "holistic review" processes that fail to maintain objective, verifiable records of evaluation; 3. Collecting data on the race or ethnicity of applicants prior to the finalization of admission decisions; and 4. Pursuing or enforcing racial targets.

(2d Am. Compl. at 50-51.)  Secondly, Plaintiffs seek:

> C. Specific Performance / Injunctive Relief for Plaintiffs:  1. An order directing Defendants to re-evaluate the application of Stanley Zhong under a strictly race-neutral standard, free from the discriminatory procedures identified herein.  2. An order prohibiting Defendants from discriminating against Plaintiff Minor Son in future admissions cycles.

(*Id.*)

Defendants assert that Plaintiffs lack standing to pursue their proposed injunctive relief because *pro se* plaintiffs do not have standing to seek injunctive relief on behalf of others.  (MTD at 12-13.)  Plaintiffs contend that Defendants' arguments regarding their request for injunctive relief are premature because Plaintiffs do not need to "establish at

ORDER - 10

the pleading stage that every formulation of requested relief will ultimately be entered exactly as pleaded." (Resp. at 21.)

The court agrees with Defendants that Stanley[8] does not have standing to seek injunctive relief on behalf of other persons because he is proceeding *pro se. See Johns*, 114 F.3d at 876 ("[C]onstitutional claims are personal and cannot be asserted vicariously") (citing *U.S. v. Mitchell*, 915 F.2d 521, 526 n.8 (9th Cir. 1990) (stating *pro se* litigant "does not have standing to raise the rights of other persons whose rights may have been violated[.]")). Accordingly, the court dismisses Stanley's requests for orders (1) "prohibiting Defendants from discriminating against Plaintiff Minor Son in future admissions cycles" and (2) "permanently enjoining Defendants" from "[c]onsidering or using race as a factor in student admissions;" "[u]sing 'holistic review' processes[;]" "[c]ollecting data on the race or ethnicity of applicants prior to the finalization of admission decisions;" and "[p]ursuing or enforcing racial targets" because these requests seek relief on behalf of others. (*Id*. at 50-51.) The court, however, denies Defendants' motion to dismiss Stanley's request for "an order directing Defendants to re-evaluate [his] application . . . under a strictly race-neutral standard" because that request seeks redress for Stanley's own injury. (*Id*. at 51.)

//

//

//

---

[8] Because the court has dismissed Nan and Minor Son for lack of standing, the court now refers specifically to Stanley as the only remaining plaintiff.

ORDER - 11

5.      Sovereign Immunity Bars §§ 1983 and 1981 Claims.

Defendants assert that sovereign immunity bars Stanley's federal claims for damages against the University and UW Officials in their official capacities. (MTD at 23-24.) Stanley argues that Defendants' sovereign immunity arguments are overbroad and do not justify dismissal. (Resp. at 21-23.)

The Eleventh Amendment prohibits suits against a state for monetary damages in federal court without the state's consent. *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 72-73 (2000). Eleventh Amendment immunity extends to state agencies that are considered "arms of the state" and to state employees acting in their official capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Courts in this district have found that the University is an arm of the state of Washington that enjoys Eleventh Amendment immunity. *See Robinson v. Univ. of Washington*, No. C15-1071RAJ, 2016 WL 4218399, at *8 (W.D. Wash. Aug. 9, 2016), *aff'd*, 691 F. App'x 882 (9th Cir. 2017) (compiling cases).

Eleventh Amendment immunity, however, is limited in three ways. First, Congress may abrogate that immunity pursuant to its lawmaking powers conferred by the United States Constitution. *Kimel*, 528 U.S. at 80. "Second, a State may waive its sovereign immunity by consenting to suit." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999) (citation omitted). Finally, the Eleventh Amendment does not prevent plaintiffs from proceeding against individual defendants in their official capacities for prospective injunctive relief based on alleged

//

ORDER - 12

violations of federal law. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016); *Ex parte Young*, 209 U.S. 123, 126 (1908).

To begin, the court dismisses Stanley's 42 U.S.C. § 1983 damages claims for violations of equal protection and 42 U.S.C. § 1981[9] against the University and the UW Officials in their official capacity because they are barred by the Eleventh Amendment. The Ninth Circuit has held that "[t]here is no doubt that suit under either §§ 1981 or 1983 against [a state agency] is a suit against the state *qua* state and is, therefore, barred by the Eleventh Amendment." *Peters v. Lieuallen*, 693 F.2d 966, 970 (9th Cir. 1982); *see also Braunstein*, 683 F.3d at 1188 ("It has been 'well established for many years' that sovereign immunity precludes §§ 1981 and 1983 damages claims against state entities and state actors in their official capacity.")). The UW Officials are not, however, entitled to sovereign immunity from suits for damages in their individual capacities, *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016), and the UW Officials are not entitled to sovereign immunity in their official capacity for claims for prospective injunctive relief under the *Ex Parte Young* doctrine, *Ex parte Young*, 209 U.S. 123, 126 (1908).

Second, the court dismisses Stanley's WLAD claim against the University and the UW Officials because Washington has not waived its Eleventh Amendment immunity

_____

[9] Defendants argue that the court should dismiss the § 1981 claim because there is no standalone cause of action under § 1981. (Reply at 9-10.) Instead, plaintiffs must bring § 1981 claims under § 1983. *Yoshikawa v. Seguirant*, 74 F.4th 1042, 1044-45 (9th Cir. 2023). The court finds that in Count III of the second amended complaint, Plaintiff sufficiently clarifies that he is bringing his 42 U.S.C. § 1981 claim pursuant to § 1983. (*See* 2d Am. Compl. ¶ 177 ("Plaintiffs seek this relief under 42 U.S.C. § 1983[.]").)

ORDER - 13

from suits brought under the WLAD. *See McConnell v. Critchlow*, 661 F.2d 116, 117 (9th Cir. 1981) ("Washington's waiver of immunity in its own courts does not waive its immunity in the federal courts."); *Woods v. Washington*, No. C10-117RSM, 2011 WL 31852, at *4 (W.D. Wash. Jan. 4, 2011), *aff'd*, 475 F. App'x 111 (9th Cir. 2012) (dismissing plaintiffs' WLAD claims against the University without prejudice to re-filing them in state court). Additionally, the UW Officials are not proper defendants under the WLAD. *See* RCW 49.60.400(8) (defining the "state" as "the state itself, any city, county, public college or university, community college, school district, special district, or other political subdivision or governmental instrumentality of or within the state").

The court, however, denies Defendants' motion to dismiss Stanley's Title VI claims against the University as barred under the Eleventh Amendment because Congress abrogated sovereign immunity for such claims.[10] *See Braunstein*, 683 F.3d at 1189.

Although "[o]rdinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court," district courts may dismiss such claims with prejudice where "the bar of sovereign immunity is absolute," meaning "no other court has the power to hear the case" and the plaintiff could not "redraft their claims to avoid" the bar. *See Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) (citation omitted). Therefore, the court

//

---

[10] To the extent Stanley raises a Title VI claim against the Regents in their individual capacities, that claim fails because individuals are not proper defendants under Title VI. *See, e.g., Corbin v. McCoy*, 3:16-cv-01659-JE, 2018 WL 5091620, at *7 (D. Or. Sept. 24, 2018) (compiling cases).)

ORDER - 14

dismisses Stanley's claims that are barred by sovereign immunity with prejudice and without leave to amend.

**B.      Motion to Dismiss for Failure to State a Claim**

Defendants urge the court to dismiss Stanley's second amended complaint because:  (1) Stanley does not plausibly allege that the University considers race in its admissions decisions and discriminates against Asian Americans; (2) Stanley fails to plausibly allege a violation of the WLAD; and (3) his claims for damages are barred by the doctrine of qualified immunity.  (*See generally* MTD.)  The court addresses each argument in turn.

1.      Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). Under this standard, the court construes the allegations in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the claim contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).

The court need not accept as true legal conclusions, "'formulaic recitation[s] of the elements of a cause of action[,]'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir.

2012) (quoting *Twombly*, 550 U.S. at 555), or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences[,]" *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (citation omitted).

### 2. Stanley Plausibly Alleges Racial Discrimination.

Defendants assert that Stanley fails to state a plausible claim of discrimination under the Fourteenth Amendment's Equal Protection Clause (Count I), Title VI of the Civil Rights Act of 1964 (Count II), or 42 U.S.C. § 1981 (Count III) and therefore should be dismissed. (MTD at 13.) Defendants contend that Stanley does not plausibly allege that the University actually does consider the race of the applicant when making admissions decisions, or that the University considered Stanley's race when rejecting him. (*Id.* at 13-22.) Stanley counters that he has plausibly alleged that Defendants engaged in racial discrimination and prematurely ask the court to make factual determinations at the pleading stage. (Resp. at 3-15.)

The Equal Protection Clause provides "any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV § 1. The clause "is essentially a

ORDER - 16

direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To survive a motion to dismiss, plaintiffs raising these claims must allege "intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent" in their complaints. *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998) (citation omitted).  "The central inquiry in an Equal Protection Clause claim is whether a government action was motivated by a discriminatory purpose." *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022) (citation omitted).  "A plaintiff may establish discriminatory purpose by produc[ing] direct or circumstantial evidence demonstrating that a discriminatory reason more likely tha[n] not motivated the defendant and that the defendant's actions adversely affected the plaintiff in some way." *Id.* (internal quotation marks and citation omitted).

To establish an equal protection claim, a plaintiff must plausibly allege that (1) he was treated differently from others similarly situated, and (2) the defendant acted with discriminatory intent. *McCarthy v. Barrett*, 804 F. Supp. 2d 1126, 1143 (W.D. Wash. 2011) (citation omitted).  Title VI[11] and 42 U.S.C. § 1981[12] require the same showing. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S.

---

[11] Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

[12] Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings[.]"  42 U.S.C. § 1981.

ORDER - 17

181, 198 n.2 (2023) ("*SFFA*") (evaluating SFFA's Title VI claims under the equal protection standard) (citation omitted); *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("We conclude, therefore, that § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination").

Here, Stanley alleges that even if the University's admissions criteria and process are facially race-neutral, the fact that the Allen School has target goals of increasing the percentages of specific underrepresented minorities leads to the inference that the University is nevertheless considering applicants' race. (*See generally* Resp.; *see also* 2d. Am. Compl. ¶¶ 60, 111-18, 176 (contending that the University's "holistic review" is a "euphemism for racial engineering").) Whether racial discrimination occurs below the surface of the University's admissions decisions is a factual question that is not appropriate to resolve on a motion to dismiss. *See Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 142 F.4th 819, 827 n.13 (5th Cir. 2025).

The court concludes that Stanley has plausibly alleged racial discrimination in the University's admissions process. The Supreme Court has held that enrolling "some specified percentage of a particular group merely because of its race or ethnic origin would be patently unconstitutional." *Grutter v. Bollinger*, 539 U.S. 306, 308 (2003) (citation omitted). Indeed, the Supreme Court deemed "the goal of . . . attaining a level of diversity within the schools that approximates the district's overall demographics" illegitimate. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 727 (2007) (citation omitted). In *SFFA*, the Supreme Court expressly rejected the goal of proportionality and stated that "universities may not simply establish through application

essays or other means the regime we hold unlawful today." *SFFA*, 600 U.S. at 230. When a discriminatory purpose has been a motivating factor in a state actor's decision to enact a facially neutral policy that produces a discriminatory impact, judicial deference is no longer justified. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977). Here, the DEIA Plan describes a plan to "[m]easure the percentage of domestic Black, Hispanic, and American Indian/ Alaska Native, Hawaiian/Pacific Islander undergraduates and, by year 5, evaluate whether the percentage is at least 15% (the UW-Seattle average)." (DEIA Plan at 153.) Similarly, the BPC Plan states that one of its six "'stretch goals' for the next 5 years" is to "[i]ncrease the percentage of domestic BHN undergraduates to the UW-Seattle average[.]" (BPC Plan at 181.)

These documents, taken together, plausibly support Stanley's claims. In sum, viewing the complaint and incorporated documents and all reasonable inferences therefrom in the light most favorable to Stanley, the court concludes that he has sufficiently alleged that race is considered as a factor in the University's admissions process to achieve racial balancing. Thus, the court denies Defendants' motion to dismiss Stanley's claims (1) against the UW Officials in their individual capacities for damages under § 1983 and § 1981; (2) against the UW Officials in their official capacities for prospective relief under § 1983 and § 1981; and (3) against the University for violation of Title VI.

//

//

//

ORDER - 19

3.    The Court dismisses Stanley's RCW 49.60.400 Claim.

Because the court dismissed Stanley's WLAD claim (Count IV) against the Defendants above as barred by sovereign immunity, it need not discuss the claim further here.

4.    Qualified Immunity Does Not Bar Stanley's Claims.

Defendants assert that qualified immunity bars Stanley's damages claims against the UW Officials in their individual capacities.  (MTD at 23-24.)  Stanley argues that qualified immunity does not apply because (1) he alleges "conduct that was already unlawful under longstanding federal precedent and Washington state law[;]" and (2) deciding qualified immunity is premature "because Defendants' argument depends on disputed factual characterizations of the pleaded conduct."  (Resp. at 21-23.)

Under the doctrine of qualified immunity, state officials are not liable under § 1983 "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  Courts may approach the qualified immunity question using either prong as a starting point, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and may "exercise [their] discretion to resolve a case only on the second ground when no clearly established law shows that the officers' conduct was unconstitutional" *O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9th Cir. 2021) (internal quotation marks and citation omitted).

Under the second prong, a constitutional violation is clearly established only if existing law "placed the constitutionality of the officer's conduct 'beyond debate,'" such

that "every 'reasonable official would understand that what he is doing' is unlawful.'" *Wesby*, 583 U.S. at 63 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Although a case directly on point is not necessarily required, a rule is only clearly established if it has been "dictated" by "controlling authority" or "a robust consensus of cases of persuasive authority" that "clearly prohibit[s] the officer's conduct in the particular circumstances," with "a high degree of specificity." *Id.* at 589-90 (internal quotations and citation omitted). Importantly, we may not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* at 590 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).

In reviewing a qualified immunity defense at the motion to dismiss stage, courts ask "whether the complaint alleges sufficient facts, taken as true, to support the claim that the officials' conduct violated clearly established constitutional rights of which a reasonable officer would be aware[.]" *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018). "If the operative complaint contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, then plaintiffs are entitled to go forward with their claims." *Id.* (citation modified and citation omitted).

Stanley contends that the UW Officials in their individual capacity are not entitled to qualified immunity because it was clearly established before *SFFA* that the use of "rigid racial quotas" such as the University's 15% target enrollment of students from

certain racial minorities or "mechanical racial balancing" violated the Equal Protection Clause.  (2d Am. Compl. ¶ 157.)  The court agrees.  *See Grutter*, 539 U.S. at 308 (enrolling "some specified percentage of a particular group merely because of its race or ethnic origin would be patently unconstitutional"); *Parents Involved in Cmty. Schs.*, 551 U.S. at 727 (deeming "the goal of . . . attaining a level of diversity within the schools that approximates the district's overall demographics" as an illegitimate objective").  Thus, the Defendants' motion is denied with respect to qualified immunity as to Stanley's claims for damages against Defendants in their personal capacities.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendants' motion to dismiss (Dkt. # 43).  The court orders the following:

(1) The court dismisses Nan's individual claims for lack of standing.

(2) The court dismisses Minor Son's claims without prejudice to renewing his claims if he obtains counsel.

(3) The court dismisses Stanley's requests for injunctive relief on behalf of other persons but not as to his request for redress of his own injury.

(4) The court dismisses Stanley's §§ 1983 (Count I) and 1981 (Count III) claims against the University as barred by sovereign immunity but denies Defendant's motion to dismiss Stanley's damages claims against the UW Officials in their individual capacities. and remaining prospective injunctive relief claim against the UW Officials in their official capacity under *Ex Parte Young*.  Qualified immunity does not bar Stanley's claims for damages against the UW Officials in their individual capacities .

ORDER - 22

(5) The court denies Defendant's motion to dismiss Stanley's Title VI violation (Count II) claim against the University.

(6) The court dismisses Stanley's WLAD (Count IV) claim against the University and UW Officials as barred by sovereign immunity.

Dated this  7th  day of August, 2026.

JAMES L. ROBART
United States District Judge

ORDER - 23